JAMES G. REED, *as Executor, etc.*, v. JOHN HAZLETON.

1. WRITTEN INSTRUMENT — *Contract* — *Will.* An instrument in writing may be a contract in one part thereof, concerning one piece of property, and in another part may be testamentary in relation to other and distinct property.

2. INSTRUMENT, *When a Contract* — *When a Testament.* If an instrument in writing concerning real estate passes a present interest therein, although the right to its possession and enjoyment may not accrue until some future time, it is a contract; but if the instrument passes an interest or right only upon the death of the maker, it is testamentary in its nature.

*Error from Ottawa District Court.*

PLAINTIFF in error, plaintiff below, brought this action for the recovery of eighty acres of land in Ottawa county. In his petition he alleged that he was the executor of the last will of Henry Ricket, that by the terms of said will he was to sell the land in controversy, and that defendant wrongfully kept him out of possession of the same. The defendant, in

21 — 37 KAS.

his answer, claimed title to the land under the following contract:

### "ARTICLE OF AGREEMENT.

"STATE OF KANSAS, DICKINSON COUNTY, *ss.—March 8, 1883.*—This agreement, made by and between Henry Ricket and John Hazleton, certifieth that Henry Ricket of the first party lets unto John Hazelton of the second part, 18 head of cattle, to be kept on section 13 and sheltered on the northwest quarter of section 13, town 10, range 1 west, of Ottawa county; one-half of the increase to be divided equally between said parties when sold. Henry Ricket agrees to furnish one pony for the use in herding said cattle by John Hazleton of the second party; said second party is to cut hay and put it up in good season, and carefully attend the cattle by proper shelter and feeding; said Henry Ricket, when able, will assist in attending the cattle.

" Henry Ricket, of the first party, during his lifetime will retain full and peaceful possession, and will make such improvements on said premises from time to time that he feels himself able. And John Hazleton, of the second party, shall properly care for and see to the wants and interests of the said Henry Ricket in health and sickness. And the said John Hazleton to have his home with Henry Ricket and have the use of all farming implements during the lifetime of the said Henry Ricket, and after the death of the said Henry Ricket, of the first party, the right and title of the north half of the northwest quarter of section 13, town 10, range 1 west, of Ottawa county, Kansas, shall vest in the said John Hazleton, of the second party.

"One-half of the present cattle, 18 head, to be divided when sold, between said parties.

His<br>HENRY ✕ RICKET.<br>mark.<br>JOHN HAZLETON."

Trial by the court, at the December Term, 1884. The court made the following findings of fact and conclusions of law:

"1. Sometime during the winter of 1881 and 1882, the defendant and Henry Ricket, deceased, entered into an agreement, which was afterward reduced to writing, and is the writing attached to defendant's answer herein. At that time the defendant was residing with his family in Morris county in this state, his wife being a daughter of said Henry Ricket. At the request of Henry Ricket the defendant gave up his

home in Morris county and moved onto the land in controversy, in pursuance of the agreement which was about a year afterward reduced to writing as already stated. The defendant and Henry Ricket, deceased, each entered upon the performance of said agreement about a year before they reduced the same to writing.

"2. In the month of April, 1882, defendant moved with his family from Morris county onto the land in controversy, to wit, the north half of the northwest quarter of section thirteen, in township eleven south, of range one west, where said Henry Ricket then and theretofore lived, and said parties continued to reside together thereon from that time until on or about the 4th day of August, 1883, when the said Henry Ricket went to Solomon City, Kansas, for the purpose, as he informed the defendant, of receiving more convenient medical treatment than he could at his home, on account of the distance of said home from the nearest physician. Henry Ricket from the 4th day of August, 1883, lived with his son in Solomon City until the 15th day of September following, where and when he died.

"3. In the written agreement said land, by error and mistake, was described as being in township ten, when the intention of the parties thereto was to describe the land in controversy in township eleven.

"4. After defendant moved upon said land, and before Ricket's death, he dug a well, and set out some trees thereon, and made some other improvements thereon.

"5. The defendant and his family treated Henry Ricket well while they were living together on said land.

"6. About the time that Ricket went to live with said son, and afterward, he complained to others that the defendant had threatened to strike him with a pitchfork and kill him, and did not treat him well. Of these complaints defendant had no knowledge."

### CONCLUSIONS OF LAW.

"1. At the time of the commencement of this action, defendant was entitled to the possession and was the owner of the north half of the northwest quarter of section thirteen, township eleven south, of range one west.

"2. The defendant is entitled to the relief asked by him in the third defense of his answer, to have his title quieted to said land.

"3. The plaintiff is entitled to judgment for the south half of the said northwest quarter of section thirteen, township

eleven south, of range one west, in said Ottawa county, Kansas, as prayed for in his petition herein."

There was no denial of the allegation of the plaintiff's petition, that he was the executor, duly qualified and acting. Judgment in accordance with the foregoing findings. The plaintiff brings the case here.

*R. F. Thompson*, for plaintiff in error.

*Garver & Bond*, for defendant in error.

Opinion by HOLT, C.: The plaintiff in error complains, first, that the court was not authorized to make certain findings of fact under the pleadings in the case which were made; and second, that the findings of fact were not sufficient to authorize the conclusions of law and the judgment of the court. The question to be decided in this case is, whether the writing signed by Henry Ricket and John Hazleton, called an article of agreement, is in reality a contract, or an instrument testamentary in its character. If it is a contract so far as it relates to the land in dispute, then the judgment of the court below is correct, and should be affirmed; if it is testamentary, it should be reversed. We have not been able without difficulty to determine the nature of this written instrument. It was evidently prepared by some one not accustomed to drawing written instruments, and unacquainted with the usual legal terms. We have not been able to find an instrument like this in all the numerous authorities cited by the parties, and such authorities have been of little service to us, except as they contain the general rules that mark the distinction between contracts and papers testamentary, and we have found it much more difficult to apply the rules of law to this article of agreement than to ascertain what the true rules are.

There are two parts to the instrument which we are now considering: one concerning the disposition of his personal property by Henry Ricket, which we are not called to pass upon, directly at least; the other having reference to his real estate, the title and possession of which is the subject of this

controversy. The first part of this instrument is a contract between Ricket and Hazleton; but from that alone it does not follow that the second part is a contract also. One provision of an instrument in writing may be a contract, and another, concerning different property, testamentary. (*Kinnebrew v. Kinnebrew*, 35 Ala. 628.) We shall not discuss the alleged error that the findings of fact are not within the issues of this case; if they are, they would not alter the construction which we believe ought to be placed upon this instrument; but we will say in passing to the main question to be decided in this action, that the fourth finding is probably within the objection made by the plaintiff. The rule established by the authorities, and applicable to this case, is substantially this: If an instrument of writing passes a present interest in real estate, although the right to its possession and enjoyment may not accrue until some future time, it is a deed or contract; but if the instrument does not pass an interest or right until the death of the maker, it is a will, or testamentary paper. (*Sperber v. Balster*, 66 Ga. 317; *Turner v. Scott*, 51 Pa. St. 126; *Burlington University v. Barrett, Ex'r*, 22 Iowa, 60; 19 Cent. L. J. 46.) We shall accept this as the correct rule, and apply it to this instrument. Did Ricket by this instrument give, or intend to give, to Hazleton, a present interest in this land? Let us examine. The first provision therein contained is that Rickett shall retain full and peaceful possession of the premises during his lifetime, and the last thing said of the land is, that after his death the title thereof shall vest in Hazleton. These two clauses embrace all that is stated directly about the title and possession of this land. It is provided, however, that Hazleton shall have his home with Ricket. Where? We might possibly, perhaps fairly, infer upon these premises, though it would be but an inference, and that should not control the provisions which are plainly written. Before his death Ricket left this tract; would Hazleton, under the terms of this instrument, have been compelled to go too, in order to keep his home with Ricket? It will

*Margin notes:*
1. Written instrument—contract—will.
2. Instrument, when a contract—when a testament.

be noticed that it was not Ricket that was to live with Hazleton, but Hazleton who was to have his home with Ricket. This instrument, as we have suggested,. may have been inartistically drawn so far as legal forms are concerned, but when it has reference to the possession of this land during the lifetime of Ricket, its language is strong and explicit. He was to retain — to hold, not to lose — full, *i. e.*, complete, entire — and peaceable possession. There is no joint possession, sharing it with another, nor was it to be divided, but entire. We cannot therefore believe that that part of this instrument which provides that Hazleton should have his home with Ricket gave him any right of possession in this land against Ricket, when it is construed with the unambiguous statement that Ricket should have full and peaceable possession.

Under the view which we take of this instrument, it will be unnecessary to examine the nature of a contract of bargain and sale and a covenant to stand seized to the use of the grantee, which are discussed in the briefs filed in this action. We believe that it ought not to be placed in either of those classes of conveyances. We fail to find in the instrument the ordinary words employed in a conveyance, "give, grant, bargain, and sell," nor are there other words of like signification which would establish an intention to convey a present estate. In a word, this article of agreement does not contain any of the usual operative words of a conveyance, with the possible exception of this clause: "After the death of the said Henry Ricket of the first party, the right and title of the land in question shall vest in the said John Hazleton of the second party." That provision had no present operation, and could be revoked by the grantor at any time. It was testamentary. (*McKinney v. Settles*, 31 Mo. 541; Tiedeman on Real Property, 803.)

By this instrument the possession of the personal property was given to Hazleton, while Ricket retained possession of the real estate. When the provisions are so explicit in reference to Hazleton's possession of the personal property, we cannot believe that the failure to make any reference to the right of

Hazleton to possession of the real estate in this instrument of writing, was unintentional. The old man wisely kept possession and control of his home, to prepare for the possible change in the feelings of himself and Hazleton. Hazleton was not without recourse if he had performed services for which he had not been paid. He could have presented his claim against the estate, and the courts were open to aid him in obtaining his dues.

· It is recommended that the judgment of the court below be reversed.

By the Court: It is so ordered.

All the Justices concurring.