Murphey v. Brown.

---

MURPHEY v. BROWN, EXECUTOR, ET AL.

[No. 19,126. Filed December 20, 1901. Rehearing denied June 20, 1902.]

WILLS.—*Conditional Bequests.*—*Construction.*—A testator by the terms of his will gave certain property to his wife and provided for the payment of certain annuities to the wife and others until the charter, of a bank of which he was a stockholder should expire, when specific legacies should be paid them, if they be then living. The will further provided that should testator have no issue alive at the time of the expiration of the bank charter, the residue of his estate should go to certain named beneficiaries. Testator lived until after the expiration of the bank charter, and died without issue, leaving his wife surviving, who renounced the will. *Held,* that the will was not conditional, dependent upon the death of the testator before the expiration of the bank charter. *pp. 107–116.*

SAME.—*Residuary Legacies.*—*Construction.*—Where a will made certain specific bequests payable at the time of the expiration of a bank charter, and provided if testator had no child alive at that time "then in that case I give, devise, and bequeath, upon the expiration of the bank charter and the final settlement of my estate" all the rest and remainder of the property to those who may be then living of the persons named as residuary legatees, the legacies to the residuary legatees vested at the death of the testator. *pp. 116, 117.*

SAME.—*Perpetuities.*—An item in a will providing legacies in violation of the statute against perpetuities will not invalidate the entire will, where the legacies had lapsed by reason of the death of the legatees prior to the death of testator. *p. 117.*

SAME.—*Husband and Wife.*—*Renunciation by Wife.*—*Descent and Distribution.*—Where a man died testate without issue, leaving neither father nor mother, his widow, upon the renunciation of the will, is not entitled to all of his estate under §2651 Burns 1901, by virtue of the provision of §2648 Burns 1901, "that nothing in this act shall be construed to reduce the interest the law now gives a widow in the estate of her deceased husband." *pp. 117–119.*

From Lake Circuit Court; *J. H. Gillett,* Judge.

Action by Louisa W. Murphey, against John Brown, executor of the will of William C. Murphey, deceased, and others, to contest the will. From a judgment for defendants on demurrer to complaint, plaintiff appeals. *Affirmed in part and reversed in part.*

*M. E. Forkner, A. C. Harris* and *F. Winter,* for appellant. *J. W. Youche, W. F. Jeffrey* and *E. D. Crumpacker,* for appellees.

Monks, J.—This action was brought by appellant to contest the will of her deceased husband. The testator left no children or their descendants, or father or mother, surviving him. Appellees, other than Brown, executor, are the persons named in the residuary clause in the will. Appellant, before the commencement of this action, renounced the will, in conformity with the statute. The complaint is in five paragraphs. In the first and second paragraphs it is sought to set aside the will and the first codicil and the probate thereof, on the ground that the will is conditional, and that the condition upon which it is to take effect never happened. The same relief is sought in the fifth paragraph, on the ground that the will is void, because in violation of the statute, §§8133, 8134 Burns 1901, against perpetuities. The fourth paragraph contests the second codicil, executed November 11, 1896, and the third codicil, executed September 28, 1897, on the grounds that the testator was of unsound mind when the same were executed, and that each of said codicils was unduly executed. The third paragraph proceeds upon the theory that the testator having died without issue, and leaving no father or mother surviving him, appellant, his widow, having renounced the will, is, under §2648 Burns 1901, entitled to all of his estate, notwithstanding the will. A demurrer for want of facts was sustained to each paragraph of the complaint, and, appellant refusing to plead further, judgment was rendered against her. The errors assigned call

in question the action of the court in sustaining the demurrer to each paragraph of the complaint.

The questions involved only render it necessary to set out the disposing part of the will and the first codicil, which are as follows: "I, William C. Murphey, being of sound mind and memory, do make, publish and declare this to be my last will and testament. Item 1. I give, devise and bequeath unto my wife, Louisa W. Murphey, in lieu of all her interest as widow in any real estate of which I may die seized, and in lieu of any claim to or interest in my personal property, the house and lot in the town of Crown Point, in and upon which I now live, together with all the furniture and belongings in and about said house, including all utensils and all other articles of household property, either in or about said house, or in or about the barn on said lot, including also all live stock which I may own, but not including the paintings and pictures which were executed by my daughter, Anna Florence Murphey, deceased, all of which paintings and pictures, in case I die without issue, either living or posthumous, I give to Georgia Black, daughter of N. E. Black, of Indianapolis, Ind. Item 2. I direct that my executor, hereinafter named, shall immediately upon my death take possession, charge, and control of all my personal property, including all moneys, rights, choses in action, credits and effects which I may own, or in which I may have any interest at the time of my death. (Excepting, of course, all the personal property herein specifically given or bequeathed to other persons.) And he shall have the entire care and management thereof, but he shall not dispose of, but continue to hold, manage, and control my bank-stock and all my interests in the First National Bank of Crown Point, until the 11th day of September, 1894, when the charter of said bank expires; that he shall, as far as possible, pay my debts, if any, out of the proceeds of such personal property, other than said bank-stock, as shall come into his hands, but in case it is in-

Murphey *v.* Brown.

sufficient for such purpose and my executor can not arrange with my creditors, or any of them, to defer the payment of my debts (by paying reasonable interest) until after the expiration of the charter and liquidation of the business of said bank, or until such debts can be paid by him out of dividends which may come into his hands, and which may not be needed to pay the annual legacies herein provided for, then he shall convert enough of my bank-stock into cash to enable him to pay such creditors. And in case said bank should go into liquidation before the expiration of its charter in 1894, I direct my executor to invest the money, which he shall receive upon such liquidation, in other safe and profitable investments; and should the annual income of my stock in said bank ever become permanently less than would be the income from the money for which said bank-stock could be sold, if placed in other safe investments, then I authorize my executor, should he believe it to be to the best interest of my estate to do so, to dispose of my bank-stock and with the proceeds thereof, to make other safe investments, and out of the dividends and income, arising from my bank-stock and other personal property, my executor shall make the following payments: (1) He shall pay to my wife, Louisa W. Murphey, the sum of $300 each year, to be paid quarterly; but should there hereafter be born to me, by my said wife, any child or children, then, in such case, the amount so to be paid to her each year shall be increased to $600. (2) He shall pay to Joshua Holland, of New Castle, Indiana, the sum of $500 each year, to be paid quarterly. (3) He shall pay to Nancy Holland, wife of said Joshua, the sum of $500 each year to be paid quarterly. Item 3. At the time of the expiration of the charter of said bank, and after the liquidation of its affairs, I direct that out of the moneys which shall then be and come into the hands of my executor, he shall pay to my wife, Louisa W. Murphey, if she be then living, the sum of $3,000; to the said Joshua Holland, if

he be then living, the sum of $2,000, and to said Nancy Holland, if she be then living, the sum of $2,000. But nothing in this or any other item in this will shall be construed to require or authorize the payment of the foregoing $7,000, so directed to be paid to my said wife and said Joshua and Nancy Holland, or any part of it, before the 11th day of September, 1894. Upon the payment to my said wife of the said $3,000, or in case she should die before the time of making said payment, then at the time of her death, the quarterly payments to her, provided for in the preceding item of this will shall cease. And upon payments to said Joshua Holland of said $2,000, or in case he should die before the time of making said payment, then at the time of his death the quarterly payments to him provided for in the preceding item of this will shall cease. And upon payment to said Nancy Holland of said $2,000, or in case she should die before the time of making said payment, then at the time of her death the quarterly payments to her provided for in the preceding item of this will shall cease. Item 4. Should there be no issue of mine alive on the 11th day of September, 1894, then in that case, I give, devise, and bequeath upon the expiration of said bank charter and the final settlement of my estate and after all the debts and foregoing bequests and legacies are paid, all the rest and remainder of my property of whatever nature and wherever situated to those who may be then living of the following named persons, to be divided equally between them, to wit: My nieces, Virginia A. Murphey and Bertha Harvey, my brothers, Hiram B. Murphey, Robert P. Murphey, Eli C. Murphey, Miles E. Murphey and John F. Murphey, and my sisters, Eliza J. Elliott and Sophia C. Milligan; but should any of said persons, at the time of the final settlement of my estate, be dead, with lawful issue surviving them at the time of said final settlement, then such surviving issue shall take the portion which such deceased, if then living, would have

taken. Item 5. Should there be born to me by my said wife, any child or children, either before or after my death, and should such child or children be alive at the time of the expiration of the charter of said bank in 1894, then, in that case, the devises and bequests made in item 4 of this will shall be considered revoked and annulled, and the persons in said item named and provided for shall take nothing, but all the property mentioned in said item 4 shall go to such child or children if living, at the time of the expiration of said bank charter. And in such case I direct that my executor shall continue to have and retain the possession, charge, management, and control of all said property, so in this item given to such child or children, and for this purpose he shall make such investments as shall be safe and remunerative of all moneys and property under his control, and shall quarterly, or oftener if necessary, pay to the proper person for the maintenance, education, and support of such child or children, as much of the income to be derived from such investments as shall be necessary, but the principal sum of such investments shall not be paid over by my executor until such child, or if there be more than one, until such children, respectively arrive at the age of thirty years. In case of the birth of any such child or children, the pictures and paintings executed by my deceased daughter, Anna Florence, mentioned in the first item of this will, shall go to such child or children."

First Codicil. "I, William C. Murphey, being of sound mind and memory, do make, publish, and declare the following codicil to my last will and testament, dated the 2d day of May, 1885. Item 1. I do hereby revoke item 7 and nominate and appoint as executor of my last will and testament, Geo. R. Murphey, of New Castle, Indiana, in place of Julius W. Youche. Item 2. It is my will that the name of my sister Mary M. Bond should appear in item 4, and I desire that she should be an equal heir or beneficiary with my other brothers and sisters in my estate.

Item 3. I hereby direct my executor within one year from my death to pay $1,000 to Rose Morris, now residing in Knightstown, Indiana." This codicil was executed August 7, 1891.

Appellant insists that said will "is conditional, dependent upon the death of the testator prior to September 11, 1894, and that the testator having lived beyond that day the condition upon which said will, and especially items two, three, and four were to take effect, has not happened, and that, therefore, the will as a whole, and especially the disposing part thereof as contained in said items, never took effect, and is void. It is true that a testator has the right to make a will to be operative only on the happening of a contingent event. *Lindsey* v. *Lindsey,* 45 Ind. 552; *Gibson* v. *Seymour,* 102 Ind. 485, 52 Am. Rep. 688; 1 Redfield, Law of Wills (4th ed.), 176, 180; Jarman, Wills (6th Am. ed. by Bigelow), 25, 26; Schouler, Wills (3d ed.), §§285-289; 29 Am. & Eng. Ency. Law, 130-134. But no will has ever been defeated by such condition, except where the intention of the testator that it should not operate clearly appeared from the language of the will. Redfield, Law of Wills (4th ed.), 177; Schouler, Wills (3d ed.), §286; *Cody* v. *Conly,* 27 Gratt. (Va.) 313, 320, 321; *French* v. *French,* 14 W. Va. 458, 499, and authorities cited. In *Cody* v. *Conly, supra,* on page 320, the court said: "The cases on this subject show, that while a person may, certainly, make a conditional will, his intention to do so must appear very clearly on the face of the will; and if such an intention do not so appear, the will must be regarded as unconditional."

Judge Redfield in his work on wills (4th ed.), volume 1, page 177, says: As questions of a very embarrassing nature often arise in regard to the proper testamentary character of papers left, in the form of a will, but expressed in terms more or less contingent, it must be borne in mind, that, in that class of instruments, the question must turn

Murphey *v.* Brown.

upon this point, whether the contingency is referred to as
the occasion of making the will, or as the condition upon
which the instrument is to become operative."

It is often the case that particular provisions of a will
are made contingent to meet possible changes in the estate
or the beneficiaries, but it is exceptional that contingencies
are created that may result in partial intestacy. It was
said by this court in *Spurgeon* v. *Scheible,* 43 Ind. 216, on
page 220: "A construction which would result in partial
intestacy is to be avoided, unless the language of the will
is such as to compel such construction. *Cate* v. *Cranor,* 30
Ind. 292."

It is insisted by appellant that the testator in this case
intended his will to be ineffectual unless he should die be-
fore September 11, 1894. No such condition is expressed
in the instrument executed May 2, 1885. No provision
in the will is expressly made to depend on such a contin-
gency. Unless, therefore, it clearly appears from said
instrument, taken as a whole, that it was the intention of
the maker that it should not take effect unless he 'died be-
fore said date, the same must be held unconditional and
valid. The provisions of the will must be such that they
can not be executed after that date without antagonizing
the testator's plain intention, or it can not be regarded as
contingent. The testator having died after September 11,
1894, without issue, and appellant, his widow, having re-
nounced the will, and the specific legatees having died
under such circumstances that their several legacies lapsed,
the residuary bequest contained in item four of the will is
the only one left for enforcement. While the legal effect of
a will must be determined according to the conditions as
they exist at the death of the testator, all the provisions of
the instrument, and the situation at the time of its execu-
tion, may be considered in determining his intention. The
first clause of the will declared it to be the "last will and
testament" of the testator, without any condition. The pro-

visions in the first item in regard to the real and personal property therein described are unconditional and are as capable of enforcement now as if the testator had died before September 11, 1894. It is true that appellant renounced the will, and for that reason the first item can not affect her interest, but her renunciation can have no bearing on the testator's intention when the will was executed.

The third item of the codicil of August 7, 1891, three years before September 11, 1894, gave Rose Morris $1,000, to be paid one year after the testator's death. The death of the legatee caused this bequest to lapse, but that event can not affect the testator's intention at the time he made the provision. This bequest is absolute and unconditional, and is in no way dependent on the expiration of the bank charter. We have these two items making absolute gifts of property, wholly independent of any other provisions in the will, capable of enforcement, showing conclusively the intention of the testator to die testate, so far at least as the property mentioned in said items is concerned, regardless of the date of his death. It is clear, therefore, that the testator intended said will to be final and not provisional. Did the testator intend any of the other provisions of said will to be conditional?

Looking at the will as a whole, we think it is clear that it was the purpose of the testator to dispose finally of all his property, but to postpone the distribution of that part not mentioned in item one until after the expiration of the bank charter, if he died before that time. Such intention made it necessary to provide some arrangement for its management and control until that date. No provision was made after that time, for the reason that it was then to be distributed to the beneficiaries. It nowhere appears by implication or otherwise that the bequests were to be invalid unless the testator died before the expiration of the bank charter, September 11, 1894. The testator may have believed he would die before the expiration of the bank charter, and

Murphey v. Brown.

that belief may have caused him to make the will, but it was not made a condition upon which its validity depended. He manifested some solicitude about the management of his bank stock, and gave particular directions respecting it, but that was only to provide for the possibility of his death before the expiration of the bank charter. As we have already shown, motives which prompt wills should never be confused with conditions vital to their validity. 1 Redfield, Law of Wills (4th ed.), 177; Schouler, Wills (3d ed.), §286; *Cody* v. *Conly,* 27 Gratt. (Va.) 313, 320, 321; *French* v. *French,* 14 W. Va. 458, 499.

No reason has been suggested why the testator should have desired that the question, whether the greater part of his large estate should go to his wife or his collateral kindred, should depend on whether he was alive on September 11, 1894. His purpose no doubt was to increase his estate from an investment he regarded as likely to be profitable, and, more securely to guard it, he put limitations on the power of the executor to sell the bank-stock; but this was a purely administrative matter, and could have had nothing to do with his desire concerning the ultimate disposition of his estate.

It is urged that the will should be held conditional, for the reason that any other construction would cut off a child of the testator, had one been born after September 11, 1894. Provision was made for the possibility of children, and it must be presumed that the testator made all the provision that seemed necessary to him. The presumptions of law are against conditions that will result in intestacy, and it is fair to presume, the contrary not appearing, that the testator had lived long enough with appellant when he made the will to know something about the probability of children, and that he knew or had reasonable grounds to believe that, according to the course of nature, if no children were born before the 11th day of September, 1894, over nine years after the date of the will, there never could be any.

It is next insisted that the legacies to the collateral kindred, given by item four, were to vest absolutely on September 11, 1894, and that the class of beneficiaries should then be ascertained, and, as the testator was alive on that day, the legacies did not and could not then vest, and the class of beneficiaries could not at that time be ascertained. A will speaks from the death of the testator, and governs his estate as it then exists. It is true that estates can not vest, under a will, until the death of the testator, and if impossible conditions have been attached to them, they may never vest.

Item four provides that if there was no child alive at that time, "then in that case I give, devise and bequeath upon the expiration of the bank charter and the final settlement of my estate" all the rest and remainder of the property to those who may be then living of the persons named as residuary legatees. This required that the bank charter must have expired, and the estate must have been finally settled before the beneficiaries would be entitled to the possession of the property. The right to the legacies, however, vested in the residuary legatees on the death of the testator, whether that occurred before or after September 11, 1894. *Bruce* v. *Bissell,* 119 Ind. 525, 12 Am. St. 436; *Amos* v. *Amos,* 117 Ind. 37; *Aspy* v. *Lewis,* 152 Ind. 493, 496; *Heilman* v. *Heilman,* 129 Ind. 59. Nor were the beneficiaries to be ascertained on said date, as claimed by appellant.

A subsequent part of said item says, "but should any of said persons *at the time of the final settlement of my estate* be dead, with lawful issue surviving them at the time of the final settlement of my estate, then such surviving issue shall take the portion which such deceased, if then living, would have taken." Thus it appears from the express language of the will that the testator intended the estate to go to the beneficiaries living, not at the expiration of the bank charter, but at the final settlement of the estate, and if any

should be dead leaving issue, such issue should succeed to the right of the ancestor.

Appellant next insists that the will is void, on the ground that it violates the statute against perpetuities. The law only looks to the situation at the time of the testator's death, to determine the effect of a will. A will may, therefore, be in violation of the statute against perpetuities when executed, and be void for that reason, when applied· to the conditions then existing, but events may happen, before the death of the testator, that will remove all such objectionable features, and the estate created by the will at the death of the testator be valid. *McArthur* v. *Scott,* 113 U. S. 340, 5 Sup. Ct. 652, 28 L. Ed. 1015; Gray, Perpetuities, §231; 1 Jarman, Wills (5th Am. ed.), 519.

The testator having died without issue, after September 11, 1894, and the specific legacies having lapsed by reason of the death of such legatees, items one and four were the only effective provisions of said will at the death of the testator. It is clear that the provisions of item one are not in violation of the statute against perpetuities. Under item four, as we have shown, the rights of the residuary legatees vested on the death of the testator, and the possession thereof was postponed only until the debts and funeral expenses were paid. It is evident that this item does not violate said statute.

The next position of appellant is that the testator having died leaving neither descendants nor father nor mother, and appellant having renounced the will, takes all of his property by virtue of the act of 1891, being §2648 Burns 1901, §2488a Horner 1901, which reads as follows: "If a man die testate leaving a widow, one-third of his personal estate shall descend to said widow, subject, however, to its proportion of the debts of said decedent: Provided, however, that nothing in this act shall be construed to reduce the interest which the law now gives a widow in the estate of a deceased husband: And provided, further, that such widow

may elect to take under the will of said decedent instead of this or any other law of descent of this State, which election shall be made within ninety days after said will has been admitted to probate in this State, and in the same manner as widows are now required by law to elect."

Prior to this act the husband could dispose of his entire personal estate by will, except the sum of $500 given his widow by §2424 Burns 1901, §2269 R. S. 1881 and Horner 1901. In the absence of a will, however, her interest in the personal property in no case was less than one-third, after the payment of the debts, and if there were no children or their descendants, and no father or mother, the widow, in case of intestacy, took the whole estate under §2651 Burns 1901, §2490 R. S. 1881 and Horner 1901.

It is insisted by appellant that the provision in the act "that nothing in this act shall be construed to reduce the interest the law now gives the widow in the estate of her deceased husband," gives the entire estate to the widow, as against her husband's will, when she would have received it under the last named section without a will. We can not agree with appellant in this contention. The proviso grants nothing, it merely limits the operation of the new act upon laws in force when it was enacted. *City of Chicago v. Phenix Ins. Co.,* 126 Ill. 276, 280.

It follows from what we have said that the court did not err in sustaining the demurrer to the first, second, third, and fifth paragraphs of the complaint.

The court, however, erred in sustaining the demurrer to the fourth paragraph of complaint. That paragraph alleges that the testator was of unsound mind when he executed the codicils of November 10, 1891, and September 28, 1897, and that each of said codicils was unduly executed. These grounds of contest were sufficient and properly stated.

The judgment is affirmed as to the first, second, third, and fifth paragraphs of complaint, and reversed as to the fourth paragraph, with instructions to overrule the de-

murrer thereto, and for further proceedings not inconsistent with this opinion.