Heaston *v.* Krieg—167 Ind. 101.

---

HEASTON, EXECUTOR, ET AL. *v.* KRIEG.

[No. 20,504. Filed April 27, 1906. Rehearing denied June 28, 1906.]

1. APPEAL AND ERROR. — *Complaint.* — *Exhibits.* — *Estoppel.* — *Wills.—Contest.*—Where the contestant of a probated will is required, by an order of the court entered upon the contestees' motion, to make an exhibit of a former testator's will, they are estopped on appeal from maintaining that such will is not a part of the complaint. p. 107.

2. PLEADING. — *Complaint.* — *Exhibits.* — *Wills.—Probate.—Contest.—Substitution of Another.*—A subsequent will is a proper exhibit to a complaint to set aside and annul the probate of a prior will, where the plaintiff asks also that such subsequent will be admitted to probate. p. 107.

3. WILLS.—*Probate.—Setting Aside.—Establishing Another in Same Action.*—A devisee and legatee under a subsequent will may contest a prior probated will and propound such subsequent will for probate in the same action. p. 108.

4. PLEADING. — *Complaint.* — *Exhibits.* — *Wills.* — *Probate.* — Under §365 Burns 1901, §362 R. S. 1881, providing that where an action is founded upon a written instrument, such instrument or a copy thereof must be filed with the complaint, a will sought to be probated must be set out in the complaint or made an exhibit thereto. p. 108.

5. WILLS.—*Time of Taking Effect.*—A will takes effect at the death of the testator. p. 108.

6. SAME.—*Conditions.—Implied.*—Ordinarily, the courts will not construe the performance of certain things mentioned in a will to be performed by a legatee as a condition to the taking effect of the legacy, such testator having a complete remedy at all times by revocation. p. 109.

7. SAME.—*Conditions.—Care and Support.—Consideration.— Contracts.*—A will reciting that in consideration of love and affection and the legatee's taking care of and supporting testator during the remainder of her life, certain property is be-

queathed to such legatee, is not necessarily upon a condition subsequent, since the condition of care and support does not go to the whole consideration. p. 109.

8. WILLS.—*Conditions.—Intention.*—Conditions in a will are not favored, and unless expressly stated or clearly intended, they will not be implied. p. 109.

9. SAME.—*Sustaining.—Construction.*—Courts will sustain a properly executed will where the intent is clear, if it can consistently with the rules of law. p. 109.

10. PLEADING.—*Complaint.—Exhibits.—Wills.—Contest.*—A husband's will is not a proper exhibit to a complaint by the legatee of a subsequent will by the wife to set aside the probate of her prior will and establish such subsequent will, and a want of power of disposition by contract as shown therein, cannot be considered on demurrer to such complaint. p. 110.

11. WILLS.—*What Are.—Statutes.*—Prior to the statute of wills of 1837 (1 Vict. c. 26) almost any kind of a testamentary document disposing of or affecting property was entitled to probate. p. 110.

12. SAME.—*Definition.*—A will is an·instrument executed with the formalities required by law, whereby the testator makes a disposition of property to take effect at his death. p. 111.

13. SAME.—*Provisions.—Contracts.*—It is not fatal to a will as such that it contains provisions of a contractual nature. p. 111.

14. SAME.—*Provisions.—Contracts.—Probate.*—A document of a contractual and also of a testamentary character cannot grant a present interest in, and at the same time bequeath, the same property; but such document may be probated as a will when it contains a devise or bequest, if it be properly executed as a will. p. 111.

15. SAME.—*Animus Testandi.—Parol Evidence.*—A document stating that in addition to certain property "there shall be paid to" plaintiff "at the death of" testator "the whole of the residue of the estate, real, personal and mixed, of which she shall die seized" shows an *animus testandi,* parol evidence being unnecessary to establish same. p. 112. .

16. WORDS AND PHRASES.—*"Paid."*—The word "paid" is often loosely used and is always liberally construed. p. 112.

17. WILLS.—*Property Conveyed.—Deeds.—Description.*—A document, executed with the formalities of a will, giving to plaintiff at decedent's death all of the property of which she shall "die seized," cannot operate as a conveyance *in presenti,* since it is void for such purpose for want of description. p. 113.

18. SAME.—*Contracts.—Care and Support.—Conditions Subsequent.*—Where testator agreed to bequeath plaintiff, in consid-

eration of care and support, all the property of which testator might "die seized," and testator refused to live with plaintiff, the plaintiff cannot recover such property at testator's death. p. 113.

19. WILLS.—*Future Wills.—Provision against Making.—Contracts.—Testamentary.*—A writing, executed by an elderly widow, in the form of a will, purporting to give to plaintiff certain property absolutely, as well as certain other property of which she might "die seized," on plaintiff's performance of certain services, and providing that the same shall supersede any will theretofore or thereafter executed, and further providing certain legacies to others, is testamentary, the testator still having the power of transfer *inter vivos.* p. 113.

20. SAME.—*Animus Testandi.—Parol Evidence.*—A document, properly executed as a will and incapable of operating in any other way, will be treated as testamentary, the *animus testandi* being necessarily implied, parol evidence to overthrow such intent being inadmissible. p. 114.

21. SAME.—*Conveyances.—Construction.*—Where a document is capable of being construed as a will and of a conveyance *in presenti,* the latter of which constructions nullifies the document, it will be construed as a will, thereby sustaining same. p. 114.

22. DEEDS.—*Lease and Release.—Statute of Uses.—Constructions.*—A deed of lease and release attempting to convey a freehold *in futuro* will be upheld as a covenant to stand seized, thus making it effectual under the statute of uses, though such deed was void at the common law. p. 115.

23. SAME.—*Wills.—Construction.*—Where an instrument intended as a will cannot operate as such, it will be upheld as a deed if possible; and *vice versa.* p. 115.

24. WILLS.—*Powers.—Express.—Implied.*—Where the widow was given power to dispose of one-half of her husband's estate by his will, her disposition thereof in the prescribed manner is valid whether her will refers to the power contained in her husband's will or not, such intent being implied from the act. p. 117.

25. WITNESSES. — *Competency. — Waiver. — Evidence. — Wills. —Executors and Administrators.—Legatees.*—In an action to set aside the probate of a prior will, and to probate therefor a subsequent will, the physician of the testator is incompetent, over the objections of the legatee of such subsequent will, to testify to things learned in his professional capacity, though the executor of the prior will expressly waived any objections to such competency. p. 117.

26. EVIDENCE.—*Declarations of Plaintiff's Husband.*—*Wills.*— *Contest.*—*Undue Influence.*—It is not erroneous to exclude evidence of declarations of plaintiff's husband tending to show undue influence in a will contest where the evidence on such question is not sufficient to warrant a submission of such question to the jury. p. 119.

27. NEW TRIAL.—*Causes for.*—*Joint Assignment.*—*Evidence.*— Where error is predicated, in a motion for a new trial, jointly on a number of rulings of the court on questions to a witness and answers thereto, such error is not well taken unless all of such rulings are bad. p. 119.

28. EVIDENCE.—*Opinions.*—*Insanity.*—*Lay Witnesses.*—Lay witnesses, after testifying to the facts of their relationship with testatrix, may upon such facts as a basis state their opinion as to her sanity or insanity. p. 120.

29. NEW TRIAL.—*Instructions.*—*Joint Assignment.*—Error jointly assigned as to a number of instructions in the motion for a new trial, is not availing unless all of such instructions are bad. p. 120.

30. TRIAL. — *Wills.*—*Probate.*—*Subsequent Wills.*—*Burden of Proof.*—Formal proof of a subsequent will is all that is necessary on the part of plaintiff where she is attempting to set aside the probate of a prior will and to probate a subsequent one, the burden of showing such subsequent will to be invalid being upon defendants. p. 121.

From Huntington Circuit Court; *Levi Mock,* Special Judge.

Suit by Emma L. Krieg against John Heaston, as executor of the will of Esther McGlinn, deceased, and others. From a decree for plaintiff, defendants appeal. *Affirmed.*

*Cline, Eberhart & Cline* and *Kenner, Lucas & Kenner,* for appellants.

*Lesh & Lesh* and *Branyan & Feightner,* for appellee.

GILLETT, C. J.—Appellee instituted this action against John Heaston, as executor of the probated will of Esther McGlinn, deceased, and the persons named as devisees and legatees under said instrument, to contest the validity of such will and to probate in its stead an alleged subsequent will of said decedent. The document assailed bore date of April 30, 1903, and the later writing, under which appel-

lee claimed as a legatee, was signed September 1, 1903. The action resulted in a judgment revoking the probate of said former instrument and establishing as the last will and testament of said decedent the writing brought forward by appellee.

As the complaint appears in the record, there are two exhibits attached, one of which was a copy of the writing last mentioned and the other a copy of the will of John McGlinn, the deceased husband of said Esther. The exhibit of the alleged will of which appellee was the proponent is in the words and figures following, viz.:

## "CONTRACT.

This agreement is entered into by and between Esther McGlinn, of Huntington county, Indiana, and Emma L. Krieg, of Huntington county, Indiana, party of the second part, and its provisions are as follows, to wit:

(1) Said party of the second part, Emma L. Krieg, is to take care of the first party, Esther McGlinn, during the balance of her natural life, including boarding, lodging, washing, furnish her with all reasonable and necessary wearing apparel, medical attendance, and nurse her in sickness as required, and furnish and do all such things as may be reasonably required for her comfort and support during her remaining years, said home to be furnished in Huntington, Indiana, the free use of the property on East Franklin street where said parties now reside being permitted for said purpose, as well as a residence for the other members of the family of the second party.

(2) In consideration of the things to be done and furnished by said Emma L. Krieg, for and on behalf of said Esther McGlinn, and also the love and affection which each of said parties has for the other, said Esther McGlinn is to convey, by proper deed of conveyance to said Emma L. Krieg, the undivided one-half interest in lot No. 133 in the original plat of the city of Huntington, Indiana, in addition to which there shall be paid to said Emma L. Krieg, at the

death of said Esther McGlinn, the whole of the residue
of the estate, real, personal and mixed, of which she
shall die seized, after deducting the following, to wit:
(a) The undivided one-half of said estate which is to
go to the brothers, sisters, and descendants of said
John McGlinn, deceased, by the provisions of item
one of his will, which provisions are to be carried out.
(b) There shall also be deducted from the residue of
the estate the sum of $200 to be paid to John M. Krieg
and a like sum—$200—to be paid to Esther Ellen
Bailey. All the remainder, however, shall be paid by
the legal representative or representatives of my estate
to said Emma L. Krieg.

(3) The provisions of this instrument being .re-
quired for the comfortable and reasonable support of
said Esther McGlinn, the same are to supersede any
and all wills or codicils which have been or may here-
after be made by her.

Witness our hands this 1st day of September, 1903.

Esther McGlinn.<br>Emma L. Krieg.

This instrument was signed by the parties thereto
in our presence and signed by us in their presence,
this 1st day of September, 1903.

U. S. Lesh,<br>Eben Lesh.”

The will of said John McGlinn, according to the copy
thereof which is made an exhibit to the complaint, gave to
his wife all of his property for and during her natural life,
and, in the following language, it gave her authority to
dispose of the same:

"I do hereby authorize her, with advice of my ex-
ecutors hereafter named, to sell and with said execu-
tors to execute all necessary titles, papers, deed, and
contract for whatever portion of said property my said
wife may deem necessary for her support and comfort,
and with the further power to dispose of the one-half
of the residue of surplus if any shall remain at her
death by will or executory devise, and I will and direct
that the other half of said residue shall be equally
divided amongst my brothers and sisters, if living,
and if deceased then to their descendants."

The first assignment of error is based on the overruling of a demurrer to the complaint, and the first objection which appellants' counsel make to said pleading is thus stated by them: "The exhibits to the complaint are not parts thereof, and hence Emma L. Krieg is not a party in interest, and cannot legally contest the will of Esther McGlinn." It is alleged in the complaint, among other things, "that on September 1, 1903, said Esther McGlinn duly revoked said alleged will by an instrument in writing, signed by her and attested and subscribed by two competent witnesses, as required by law, a copy of which is hereto attached and made a part hereof and referred to as exhibit A." It is further alleged "that the plaintiff is a foster daughter of said decedent, and by the terms of her last will is named as a legatee, and as such is entitled to maintain this action." The specific relief prayed for is "that the probate of said will be annulled, and that the one herein proposed be admitted to probate in lieu thereof." Appellants admit in their brief that the copy of the will of John McGlinn, deceased, was attached to the complaint by order of the court, on their motion, so, although it is not necessary to meet the objection stated to examine said exhibit, we may say in passing, as applied to other objections urged against the complaint, that appellants, by their conduct, are estopped to deny that the copy of that will is a proper exhibit.

As to the copy of the instrument of September 1, 1903, appellants' counsel cite, as authority for the proposition that said copy is not a proper exihibt, certain decisions of this court to the effect that in an action to contest a will a copy of the instrument in contest cannot properly be attached as an exhibit. These cases are not in point, for the copy in question is the one under which appellee claims; the fact that she made it an exhibit tends to show, as does also the general structure of the complaint, that her effort in part was to procure the probate of said

instrument. She had a right, in the action to contest the earlier will, which she claimed had been revoked by the subsequent instrument, to propound said instrument for probate, if it amounted to a will. So in the strictest sense of the term, it was the foundation of her cause of action. It was not mere evidence of a right; it was her right of action. Her complaint in that respect would not have ·been good unless she had incorporated the copy in such pleading, or made it an exhibit. The· rule of the code (§365 Burns 1901, §362 R. S. 1881) that where a pleading is founded on a written instrument the original or a copy thereof must be filed is imperative, and in this respect the rule of practice in this State is stricter than at common law. *Price* v. *Grand Rapids, etc., R. Co.* (1859), 13 Ind. 58. It was held in *Watt* v. *Pittman* (1890), 125 Ind. 168, that there are cases in which it is proper to make an instrument an exhibit although it is not in the strict sense the foundation of the action, as in a complaint to construe a will, and so here, upon the same principle, it would seem that the making of the instrument of revocation an exhibit was authorized, so far as the complaint attacked the former will, to enable the court to determine from the terms of the subsequent instrument—and all of them would have to be examined—whether there was a sufficient revocation of the will in contest.

Appellants' counsel further contend that the writing of September 1, 1903, is conditional, and that therefore appellee ought to have alleged performance upon her part. It is to be observed that the things which appellee was to do according to the terms of said instrument were all to be performed in the lifetime of the decedent, and as the instrument, if a will, continued revocable until her death, no estate passed to which her stipulations could attach, either as conditions precedent or conditions subsequent. That the instrument, at least in part, was a will in law we shall attempt to show hereafter. If

the document were a deed, under which a title would pass, the protection of the interests of the grantor might incline the court to construe the statement of the agreement to support as a condition, but presumptively a will speaks as of the date of the death of the testator. It is especially unlikely that in a will a testator, who continues throughout the master of his own discretion, would attempt to protect himself by a condition precedent. This takes the case out of the range of cases in which conditions have been implied for the want of an effectual remedy in the grantor. *Richter* v. *Richter* (1887), 111 Ind. 456. Besides, the consideration for the execution of the instrument in question by the decedent is stated to be love and affection, as well as the things promised to be done by the other party, so it would seem, at least if it be assumed that the residuary clause is a will, in which it is presumed that the testator's bounty is an element, that the case comes within the rule that in the absence of express words a condition is not to be implied from the mention of a consideration if it does not go to the whole consideration. 2 Parsons, Contracts (5th ed.), 527; *Duke of St. Albans* v. *Shore* (1789), 1 H. Bl. 271, and note, p. 273, containing *Boone* v. *Eyre* (1777), and see latter case in note (t) to *Boone* v. *Eyre* (1779), 2 W. Bl. *1312, *1314; *Pordage* v. *Cole* (1607), 1 Wms. Saund. 320; *Ayer* v. *Emery* (1867), 14 Allen 67; *Gould* v. *Brown* (1856), 6 Ohio St. 538. Conditions are not favored, and, in the absence of express terms to that effect, they will not be implied in wills unless the intent is clear. *Murphey* v. *Brown* (1902), 159 Ind..106. Here, as we shall hereafter show, the provisions concerning the residuary estate can reasonably be disentangled from the other provisions of the instrument, and as it may be satisfied in any event by treating the stipulations of appellee as covenants, or by the assumption that the statement of the portion of the consideration which was valuable was in

the nature of a recital, and indulging, as we may, the presumption that it was really the intention of decedent to make appellee, to a large extent at least, the recipient of her bounty, we deem it clear that we should not treat the provisions concerning support as conditions which were punctiliously to be performed in every particular to avoid a forfeiture.

Appellants' counsel further urge in support of their demurrer that the instrument of September 1, 1903, was a contract, and that, therefore, decedent was not authorized to dispose of the property she received from her deceased husband, by means of such an instrument. As appellee made the copy of the will of John McGlinn an exhibit pursuant to the order of the court, as moved by appellants, and as said will was not a proper exhibit under the code, we are of opinion that the question as to Esther McGlinn's authority to execute said instrument in disposition of the estate is not presented by the demurrer. The question does arise upon the evidence, however, and with the preliminary statements that at the time of the execution of the writing in question said decedent was eighty-two years of age, that she had none but collateral kindred, that the appellee had been reared by decedent, that they had lived together much of the time afterwards, that decedent had received under her husband's will about $17,000 worth of property, and that she had no further estate, we proceed to the consideration of the law question presented.

It appears from the English authorities prior to the enactment of the English wills act of 1837 (I Vict. c. 26) that there was judicial sanction for the probating of almost every kind of document whereby property could be disposed of or affected, among which we may enumerate deeds, contracts, promissory notes, bills of exchange, letters, and diary entries. *Castor* v. *Jones* (1882), 86 Ind. 289, and cases cited; note to *Ferris* v.

*Neville* (1901), 89 Am. St. 480; note to *Burlington University* v. *Barrett* (1867), 92 Am. Dec. 376; *Hunt* v. *Hunt* (1828), 4 N. H. 434, 435, 17 Am. Dec. 438; 30 Am. and Eng. Ency. Law (2d ed.), 573, and cases cited. A will may be defined, with sufficient accuracy for present purposes, as any instrument, executed with the formalities required by law, whereby a person makes a disposition of his property to take effect after his death. 1 Redfield, Wills (4th ed.), *5; *Habergham* v. *Vincent* (1793), 2 Ves., Jr., 204; *McCarty* v. *Waterman* (1882), 84 Ind. 550; *Robinson* v. *Brewster* (1892), 140 Ill. 649, 30 N. E. 683, 33 Am. St. 265; *Cover* v. *Stem* (1887), 67 Md. 449, 10 Atl. 231, 1 Am. St. 406; note to *Ferris* v. *Neville, supra.* It is, of course, essential to distinguish between such provisions and those in which the beneficiary takes some interest, vested or contingent, upon the execution of the instrument. It is of the essence of a testamentary disposition of property that it be purely posthumous in operation, since during life the intent of the testator must continue ambulatory.

It affords no objection whatever to the testamentary character of an instrument that it contains provisions of a contractual nature. *Habergham* v. *Vincent, supra; Green* v. *Proude* (1675), 1 Mod. 117; *Hixon* v. *Wytham* (1675), 1 Ch. Cas. 248, Finch 195; *Thorold* v. *Thorold* (1809), 1 Phil. Ecc. 1; *Masterman* v. *Maberly* (1829), 2 Hagg. Ecc. 235; *Lautenshlager* v. *Lautenshlager* (1890), 80 Mich. 285, 45 N. W. 147; *Armstrong* v. *Armstrong* (1874), 4 Baxt. 357; *Jordan* v. *Jordan* (1880), 65 Ala. 301; *Gage* v. *Gage* (1841), 12 N. H. 371; *Symmes* v. *Arnold* (1851), 10 Ga. 506; *Turner* v. *Scott* (1866), 51 Pa. St. 126. Of course, as respects the same subject-matter, a document could not be a contract, passing an interest in the property, and a will, any more than two objects could occupy the same space at the same time. The very attaching of rights

in the property by another precludes the exercise of that continued authority upon the part of the original owner which is of the essence of testamentary power. But we think it may be affirmed, as a just deduction from the cases, that no matter by what name the parties may call their agreement, or to what extent there may be contractual provisions in it, yet if a provision of a clearly testamentary character is found in the writing and it is witnessed in accordance with the requirements of law, it may operate as a will. *Habergham* v. *Vincent, supra; Green* v. *Proude, supra; Castor* v. *Jones, supra; Gage* v. *Gage, supra; Reed* v. *Hazleton* (1887), 37 Kan. 321, 15 Pac. 177; *Turner* v. *Scott, supra.*

As to the *animus testandi,* concerning which appellants' counsel raise a question, we have to observe that a case in which a testamentary provision clearly appears is to be broadly differentiated from a case arising out of some ambiguous act, as the indorsement of a promissory note. In the former case parol evidence would be wholly unnecessary, for the *animus testandi* does not depend upon the maker's realization that the instrument he is executing is a will, but upon his intention to create a revocable disposition of his property to take effect after his death. *Kenney* v. *Parks* (1899), 125 Cal. 146, 57 Pac. 772.

In the instrument before us, the provision of item two, commencing with the words, "in addition to which there shall be paid to said Emma L. Krieg, at the death of said Esther McGlinn, the whole of the residue of the estate, real, personal and mixed, of which she shall die seized," clearly looked forward to the death of the latter, and may be given a testamentary operation. The word "paid" is one which is often loosely used, and is always liberally construed. *Sheets' Estate* (1866), 52 Pa. St. 257, 258. At the best, appellants' counsel cannot escape the proposition that aside from the interest in the house and lot which decedent undertook to convey by deed, the

provision that appellee should have at decedent's death the property of which she should "die seized" wholly failed to identify any property as the subject-matter of a conveyance *in presenti*. If decedent had refused to continue to live with appellee, and had, with the advice of her husband's executors, conveyed property to provide for her support, or if, having procured their consent, she had exercised her undoubted discretion to dispose of property to provide herself with comforts which it would have to be said that appellee's undertaking, in view of her scale of living, did not contemplate should be furnished, the latter could not have recovered such property upon decedent's death. We quote as illustrative of the force of this the following observations of the court in *Brewer* v. *Baxter* (1870), 41 Ga. 212, 5 Am. Rep. 530: "The paper writing set forth in the record, conveys only such of the described property as the maker thereof 'may die possessed of;' no present interest in the property was conveyed to the three sons, and until the death of the maker of the instrument, no one could know what portion of the property described therein he would die possessed of. Consequently, the instrument conveyed only such portion of the described property as he might be possessed of at the time of his death, and is, in law, a testamentary disposition of the property, to take effect at the death of the maker of the instrument, and if legally executed, may be proved as such in the proper court." See, also, *McCarty* v. *Waterman, supra; Reed* v. *Hazleton, supra.*

As to the undertaking in item three, whereby decedent undertook to revoke any subsequent will, it may be pertinently asked whether the provision against revocation does not have quite as much tendency to show that the absolute title to the property was treated by the parties as remaining in said decedent as it does to show that an interest was attempted to be conveyed, but, as we have already pointed out, there yet remained a way by

which she could disappoint the expectations of appellee by a conveyance *inter vivos,* so that decedent would not "die seized" of the property. Besides, it is to be remembered, that if said instrument should not be construed as a will, it would work the overthrow of the provisions in favor of John M. Krieg and Esther Ellen Bailey, who could only take as legatees. This reinforces the view that the instrument should be construed as testamentary.

As the writing in question contains every element of a valid will, and was incapable of operating in any other way; we are of opinion that the *animus testandi* must be implied, and that the instrument (supposing that it had been regularly executed) was not subject to be controlled by parol evidence tending to show any different intent. There was evidence, however, from which the jury was justified in finding that the paper was intended as a will.

But supposing that by putting together the various provisions of the writing it could be said that in its entirety it amounted to an expression, even if somewhat incoherent, of an intent to pass an interest in the property, yet, as must be admitted, there is room for the other construction, and the question then arises as to which should prevail. And at this point we may suggest that appellants occupy the peculiarly unfortunate position of contending for a particular interpretation, not for the purpose of substantially carrying out the intention of the parties to the instrument, but to the end that the provisions thereof may be extirpated, root and branch. Now, it is evident, since the decedent had authority to dispose of one-half of her deceased husband's estate by will, that an interpretation which would nullify the instrument, which she caused to be duly witnessed according to the law of wills, is not to be adopted if it can reasonably be avoided. *"Ut res magis valeat quam pereat"*—that the thing may prevail, rather than be destroyed—is a sound rule of construction,

which is frequently adopted by the courts to effectuate the intention of parties to written instruments. In *Roe* v. *Tranmarr* (1757), Willes 682, 3 Smith's Lead. Cas. (9 Am. ed.) 1780, a deed which could not operate as a release, because it attempted to convey a freehold *in futuro*, was upheld, by invoking the above rule, as a covenant to stand seized, thus giving the instrument an operation by the statute of uses, although it was intended to be a deed at common law. In delivering the opinion of the court, Willes, Lord Chief Justice, after calling attention to the rules in respect to the exposition of deeds, as laid down in Sheppard's Touchstone, and to the declaration of Lord Hale, that the judges ought to be curious and subtle to invent reasons and means to make acts effectual, according to the just intent of the parties, adds: "The judges in these later times (and I think very rightly) have gone further than formerly, and have had more consideration for the substance, to wit, the passing of the estate according to the intent of the parties, ·than the shadow, to wit, the manner of passing it." The learned annotator of Smith's Leading Cases, in his opening comment upon said case, says: "The principle which it carries out, and is usually cited to illustrate, is one of the highest importance, and is indeed the main one upon which the construction of every written instrument hinges."

The doctrine embodied in the rule of construction we are considering has frequently been recognized in will cases. Thus, in *Habergham* v. *Vincent* (1793), 2 Ves., Jr., 204, 225, which was decided after extended argument and much consideration, Wilson, J., said: "The general rule is, that, when a man has expressed a clear intention to dispose of his estate, and has taken an ineffectual mode of doing it, yet, if the instrument can be construed in another manner so as to effectuate his intention, the ceremony is matter of form; and the substance shall be carried into execution, if it may by law. * * *

So here, though the testator has called this a deed, yet, as the intention was to complete what was incomplete by the will, as it is in writing, and signed, and as to some purposes, perhaps to all, it may have a legal operation, if testamentary, in order to sustain the intention it is fair so to consider it; and I do not know any rule that stands in the way." In *Milledge* v. *Lamar* (1816), 4 Des. (S. C.) 617, James, J., in considering whether an instrument in form a deed, and which would be void as such, could operate as an executory devise, said: "But as an instrument in writing, solemnly executed, this court appears bound to give it some operation. Now the doctrine is, that when a man has expressed clearly his intention to dispose of his estate, and has taken an ineffectual mode of doing it, yet if the instruments can be construed in another manner, so as to effectuate his purpose, the ceremony is matter of form, and the substance shall be carried into execution, if it may by law. And although this paper has the form of a deed, yet as it was intended to take effect at the death of the testator, and is ratified by his will, it may be considered as testamentary." In the same case, Desaussure, J., said: "The instrument under consideration may be so construed, if it be necessary to do so, in order to give effect to the intention of the maker. It is a leading object with courts of justice to give effect to the intention of parties, both in their deeds and wills. 3 Bacon's Abr., 393. That great and virtuous magistrate, Lord Hale, said in the case of *Pibus* v. *Mitford* [(1669), 1 Vent. 372], (cited in 1 Ves., Sr., 153), 'that we ought to serve the intent if we can, as the best expositor we can go by.'" See, also, *Thorold* v. *Thorold* (1809), 1 Phil. Ecc. 1; *Masterman* v. *Maberly* (1829), 2 Hagg. Ecc. 235; *In the goods of Morgan* (1866), L. R. 1 P. & D. 214; *Thompson* v. *Johnson* (1851), 19 Ala. 59; *Sharp* v. *Hall* (1888), 86 Ala. 110, 5 South. 497, 11 Am. St. 23; *Crocker* v. *Smith* (1891), 94 Ala. 295, 10 South. 258, 16 L. R. A. 576; *Crain* v. *Crain* (1858), 21 Tex. 790; Broom's Legal

Maxims, *640; Sheppard's Touchstone, 82, 83; 1 Williams, Executors (7th Am. ed.), 150.

Cases may be found in which courts have exhibited a like anxiety to uphold as deeds instruments which could not operate as wills. Such cases and those we have above referred to are like emanations of the principle "that unless an instrument, which has been fully executed, from every point of view seems to be a nullity, it will not be intended that the parties meant that it should be invalid, and some effect will, if possible, be given to it." *Spencer* v. *Robbins* (1886), 106 Ind. 580.

The intent to execute the power conferred by the will of John McGlinn appears on the face of the instrument, and it is to be implied from the circumstances. *Rinkenberger* v. *Meyer* (1900), 155 Ind. 152, and cases cited.

Appellants, by cross-complaint, attacked the execution by decedent of the instrument of September 1, 1903, on a number of grounds, among which it is sufficient to mention unsoundness of mind and undue influence.

Upon the trial, appellants, in an appropriate manner, offered the testimony of two physicians as to the physical and mental condition of said decedent a number of months subsequent to the signing of said instrument, and it was sought to prove that such condition must have existed at the time in question. It appeared that the knowledge of said physicians as to decedent's condition was obtained while treating her professionally, but John Heaston, as executor of the will of April 30, 1903, attempted to waive the objection that they were incompetent. Complaint is made that the court refused to permit appellants to prove by said physicians the facts within their knowledge. The statute which makes physicians incompetent to testify to matters concerning their patients which they learn by reason of their professional relation contains no qualifying terms. As the patient may waive the privilege, since it is

for his benefit, we recognize as proper the holdings of this court that the executor of the patient who enjoyed such privilege may, for the purpose of upholding his attempted testamentary disposition of his property, waive the privilege which the statute confers, but since in this case the attack was solely upon the testamentary instrument of September 1, 1903, we should regard it as a perversion of said holdings to attempt to apply them to this case. It appears from the record that the wife of said Heaston was a legatee under the former will, and he was the principal witness on behalf of appellants. It is to be remembered that upon the making of the formal proof as to the execution of the instrument, it became incumbent upon appellants to show that what was *prima facie* the act of decedent was not such in law. Had this contest come after the formal probating of the instrument of September 1, 1903, and the issuing of letters of administration with the will annexed, the holder of such letters would have been charged with a duty of seeking to maintain said instrument, and he alone, in view of the posture of the case, could have waived the privilege of his decedent. The fact that these steps were not taken made no difference so far as the former will was concerned. Those who claimed under it could not waive the objection to a disqualified witness in order that they might overthrow what was *prima facie* the valid act of the decedent, for whose benefit the statute had interposed the bar. It was not a race of diligence as to who could first procure the probating of the will which he possessed, so as to put the other party on the defensive. A waiver must have its basis in the right of the decedent, and in such a case as this it can only be invoked by the executor who is seeking to support what *prima facie* at least was the valid act of his testator. See *Towles* v. *McCurdy* (1904), 163 Ind. 12; *Brackney* v. *Fogle* (1901), 156 Ind. 535.

In the portion of appellants' brief devoted to the argument of the cause, their counsel complain of the action of

the court in excluding evidence that William Krieg, 26. the husband of appellee, stated in the presence of the executors of John McGlinn's estate and certain lawyers whom they were consulting as to the right of said Esther to enter into such an agreement as the one in question, that he and his wife desired the whole of the estate for keeping said decedent. The competency of this evidence is claimed on the ground that it was a circumstance tending to show undue influence. While we recognize the legal proposition that such influence may in some circumstances be made out without direct proof of the actual exercise thereof, yet we seriously doubt whether there was enough evidence to warrant the submission of such question in this case. *Teegarden* v. *Lewis* (1896), 145 Ind. 98; *Slayback* v. *Witt* (1898), 151 Ind. 376. It also appears to us that appellants in other instances had the benefit of the ultimate facts sought to be proved. But granting that there was technical error in excluding the evidence, 27. dence, appellants are not entitled to a reversal on account thereof, because of the state of the record. The rulings were respectively made the tenth, thirteenth, fourteenth and seventeenth grounds for a new trial. The practice was pursued in each instance of setting out in the motion what purported to be a transcript of a number of questions, together with the offers to prove and the rulings of the court, and where such answers were permitted, they are also set out. In each instance the assignment of the ground for a new trial was joint, and appellants have therefore taken upon themselves the burden of showing that all of the rulings embraced within a particular cause for a new trial were erroneous. *Cincinnati, etc., R. Co.* v. *Madden* (1893), 134 Ind. 462; *Lawrence* v. *Van Buskirk* (1895), 140 Ind. 481; *Indiana, etc., R. Co.* v. *Snyder* (1895), 140 Ind. 647; *Masterson* v. *State* (1896), 144 Ind. 240; *Sievers* v. *Peters, etc., Lumber Co.* (1898), 151 Ind. 642. Each ground for a new trial, as a joint one, may be de-

fended on the ground either that a question embraced therein was leading or called for a conclusion or for matter *prima facie* privileged, or that it was followed by legal argument, instead of an offer to prove, and in one instance, concerning which complaint is made of the ruling on the motion for a new trial, the motion states that the objection to the exclusion of the evidence was overruled, instead of sustained. Counsel have also failed to comply with the rules of this court both in respect to pointing out the page and line where the particular ruling may be found and in failing to state the proposition under the points-and-authorities subdivision of their brief, as required by rule twenty-two of this court. It is further objected that the court erred in permitting witnesses who had long been acquainted with said decedent to testify as to their opinion that she was of sound mind. The particular objection which is thus advanced is that said witnesses did not state facts sufficient to be made the foundation of an opinion as to the mental condition of said decedent. There is no merit in these objections, especially in view of the fact that the witnesses were called for the purpose of proving that said decedent was sane. They certainly revealed a sufficient acquaintance with her so that the court was authorized to submit the question as to the weight of their opinion to the jury. *Colee v. State* (1881), 75 Ind. 511, 514; *Ryman v. Crawford* (1882), 86 Ind. 262; *Goodwin v. State* (1884), 96 Ind. 550, 558; *Blume v. State* (1900), 154 Ind. 343.

The question whether the court erred in the giving and refusal of particular instructions is discussed in the brief of appellants at some length. The point is made, however, by the other side that all of these matters are included within a joint assignment of errors, and we are of opinion that this is the case. *Kackley v. Evansville, etc., R. Co.* (1893), 7 Ind. App. 169. As it is not claimed that the court erred in all of these rulings, we

are not called on to consider the particular questions concerning the instructions which counsel have sought to raise. *Conrad* v. *State* (1896), 144 Ind. 290; *Masterson* v. *State* (1896), 144 Ind. 240; *Lawrence* v. *Van Buskirk* (1895), 140 Ind. 481; *Cincinnati, etc., R. Co.* v. *Madden* (1893), 134 Ind. 462; *Moore* v. *Orr* (1894), 10 Ind. App. 89.

Finally, it is urged that the verdict was contrary to the evidence. We have already considered every question that was really deserving of consideration which was presented under the above ground for a new trial.

Beyond that we may state that appellee was only called on to make formal proof in order to sustain her case, and even within the field of controversy as to the due execution of said will, the jury was wholly justified in returning the verdict in favor of appellee.

Judgment affirmed.