This action was originally instituted in the Vanderburgh Superior Court to recover the sum of $35,600 alleged to be due and owing DeMaris VanOrman under the terms of a certain contract entered into between the appellee, F. Harold VanOrman, and his father, Fred VanOrman. Thereafter a change of venue was taken to the Warrick Circuit Court.
The amended complaint of appellant (plaintiff below) was in one paragraph, to which appellee (defendant below) demurred for want of facts. The demurrer was overruled and appellee filed his answer in three paragraphs, to which appellant replied in general denial. The case was then assigned for trial. Before the date set for the trial of the cause, appellee asked and was granted a change of venue to the Pike Circuit Court. Thereafter, appellee filed a petition to reconsider the ruling on his demurrer. Appellant then moved to strike this petition from the record.
The Pike Circuit Court allowed appellee to withdraw his answers filed in the Warrick Circuit Court and overruled appellant's motion to strike appellee's petition to reconsider the ruling on demurrer. The court then sustained appellee's demurrer to the amended complaint, *Page 398 
dismissed the suit, and granted appellee a judgment for costs.
Exceptions were taken to all these rulings and appellant attempts to predicate error on each of said rulings, but in view of the conclusion which we have reached on the assignment challenging the correctness of the ruling on the demurrer to appellant's amended complaint, consideration of the other alleged errors is unnecessary.
The amended complaint alleged that appellant, DeMaris VanOrman, was the wife of Fred VanOrman and the mother of appellee, F. Harold VanOrman, and that Fred VanOrman and his son, the said F. Harold VanOrman, on the twentieth day of April, 1925, entered into the following written agreement:
 "State of Indiana, | SS. Vanderburg County. |
 "Memorandum of agreement made April 20, 1925, between Fred VanOrman of Evansville, Indiana, party of the first part, and F. Harold VanOrman of said city, party of the second part, witnesseth:
 "The first party in consideration of the payment to him of the sum of One Dollar ($1.00) by second party, and in further consideration of the covenants of second party, his heirs, personal representatives and assigns, hereinafter set forth, does hereby sell, assign, transfer and deliver unto second party, the following described personal property, the seller, however, reserving an estate therein for and during his life:
 "Fred VanOrman Hotel Company of Springfield, Ohio, Incorporated under the laws of Ohio, operating Hotel Shawnee at Springfield, Ohio. (Omitting the certificate numbers of the respective corporations.)
 "534 Shares of the Common Stock, par value $100.00 per share. *Page 399 
 "385 Shares of the Preferred Stock of Fred VanOrman Hotel Company of Springfield, Ohio, par value $100.00 per share.
 "Fred and Harry VanOrman, Incorporated, an Illinois Corporation of Decatur, Illinois, operating the Hotel Orlando at Decatur, Illinois.
"190 Shares of Common Stock of no par value.
 "Victoria Hotel Company, an Illinois Corporation of Chicago, Illinois, operating the Victoria Hotel at Chicago, Illinois.
 "99 Shares of Common Stock, par value $100.00 per share.
 "VanOrman Hotel Operating Company, of Evansville, Indiana, an Indiana Corporation now operating the McCurdy Hotel, at Evansville, Indiana.
 "1018 Shares of Common Stock of the par value of $100.00 per share, evidenced by:
 "Trustees' Certificates issued by Trustees under voting Trust Agreement.
 "And first party agrees to assign each item in the foregoing list, requiring assignment, in writing, in accordance with the preceding paragraph of this contract, and in compliance with the bylaws of the respective corporations issuing such securities, and does hereby assign each item in so far as the same can be, and to file with each of said corporations for record a copy of this memorandum of agreement.
 "Second party covenants and agrees, within sixty (60) days after the death of the first party, to establish and maintain as Trustee thereof, three trust funds of Five Thousand Dollars ($5,000.00) each; one for each of the following named children, who are sons of second party and grandsons of first party, to-wit: F. Harold VanOrman, Jr., Jerome B. VanOrman, and William Henry VanOrman. Each of said Trust funds shall be invested in sound, interest bearing, non-taxable securities, and the same with accumulations thereon shall be kept in the safety deposit vaults of a reliable Bank or Trust Company. Upon the arrival at majority by each of said children, second party as such trustees shall transfer to such child such fund and accumulations, and render a full accounting thereof. Should either of said children die before arriving *Page 400 
at his majority, then such fund for such child shall be transferred to and become part of the funds for the surviving brother or brothers of said child. Should all of the said children die in infancy, then the several funds and accumulations shall revert to and become the absolute property of second party. Said second party as Trustee is hereby empowered, however, that if at any time in his sound judgment and discretion it shall become necessary to use any portion, or all of any of said trust funds to preserve the health or educate properly either of such children, then he shall have the right to use such sums as may be necessary for such purpose, accounting fully for such expenditures in final settlement of either of such trusts.
 "Party of the second part further covenants and agrees that in the event his mother, DeMaris VanOrman, survives party of the first part, he will pay to her an annuity during her life of Six Thousand Dollars, in monthly installments of Five Hundred Dollars, each, payable on the first day of each calendar month after the death of first party.
 "And in the event that party of the first part shall be survived by one A.A. Conklin of Union City, Michigan, then party of the second part covenants and agrees to pay said Conklin during his life an annuity of Twelve Hundred Dollars ($1,200.00) payable in monthly installments of One Hundred Dollars ($100.00) each on the first day of each calendar month after the death of party of the first part.
 "To the performance of the covenants on his part to be performed, second party binds his heirs, personal representatives and assigns.
 "In Witness Whereof, Fred VanOrman and F. Harold VanOrman have hereunto set their hands and seals this 20th day of April, 1925.
"Executed in duplicate.
 "Fred VanOrman (Seal) Party of the First Part. "F. Harold VanOrman (Seal) Party of the Second Part."
 (Here follows the certificate of the Notary Public showing acknowledgment of the parties.) *Page 401 
The complaint, in addition to averments not essential to the questions raised in the memorandum to the demurrer, further alleges that the agreement was delivered to each of the parties thereto and that the defendant, Harold VanOrman, has an original copy in his possession; that the said Fred VanOrman died on the 27th day of November, 1927; that he fully performed the terms and conditions of said contract during his life; that pursuant to the terms of the agreement, the said F. Harold VanOrman paid his mother $500 per month for a period of almost five years, that is, from January, 1928, until December, 1932; that irregular payments were then made from February, 1933, until August, 1934, and that thereafter no payments were made at all. The complaint then alleges a demand for the monthly payments and concludes with a prayer for judgment in the sum of $35,600 with interest at 6 per cent.
The memorandum in support of appellee's demurrer attacks the complaint on three grounds, viz.: First, that the document involved in this case is an attempt to make testamentary disposition of the property set out in the contract without having conformed to the statute of Wills; second, that the document is without consideration, and that it is lacking in mutuality; and Third, that appellant, as a third party beneficiary, cannot maintain an action on a contract under seal.
Appellant insists that her complaint states a good cause of action and that the demurrer thereto should have been overruled.
The first contention of appellee is that the contract hereinbefore set out is an attempted testamentary disposition of the property therein described and, lacking in essentials entitling the instrument to probate, confers *Page 402 
no rights and cannot be made the basis of an action. Appellee's position in this regard is based upon the following provision in the contract: "the seller, however, reserving an estate therein for and during his life." Appellee insists that the only correct interpretation and construction of the above clause compels the conclusion that Fred VanOrman reserved all of the estate in the stocks during his natural life and that no title to said stocks was transferred in praesenti upon the execution of the contract. In support of this construction, appellee relies on the following cases: Stroup v. Stroup (1895), 140 Ind. 179,39 N.E. 864; Smith, Administrator, v. Ferguson (1883),90 Ind. 229; McCarty, Administrator, v. Waterman (1882), 84 Ind. 550;Heaston v. Krieg (1906), 167 Ind. 101, 77 N.E. 805; Reed,Admx., v. Reed (1938), 105 Ind. App. 185, 14 N.E.2d 320;Murray v. Cazier (1900), 23 Ind. App. 600, 53 N.E. 476.
The doctrine established by these authorities, in substance, is that when a disposition of property takes effect in interest at or after the death of the party making such disposition, 1. and said person does not divest himself of an interest in praesenti, the effect of the transaction is testamentary in character and therefore invalid unless the instrument has been executed in conformity with the requirements of the statute of wills. Our question is, does the above doctrine control in the interpretation of the contract herein involved?
 In the case of Heaston v. Krieg (1906), 167 Ind. 101, 111, 77 N.E. 805, the court, speaking on the difference between 2. a will and a contract said:
 "A will may be defined, with sufficient accuracy for present purposes, as any instrument, executed *Page 403 
with the formalities required by law, whereby a person makes a disposition of his property to take effect after his death. (Citing cases.) It is, of course, essential to distinguish between such provisions and those in which the beneficiary takes some interest, vested or contingent, upon the execution of the instrument. It is of the essence of a testamentary disposition of property that it be purely posthumous in operation, since during life the intent of the testator must continue ambulatory."
In the case of Spencer v. Robbins (1886), 106 Ind. 580,582, 583, 584, 585, 5 N.E. 726, the court was required to construe a deed which conveyed certain real estate to the grantees, and which contained the following recital:
 "`. . . To be equally divided between them at my decease, and after the payment of all my funeral and burial expenses by them fully settled; and they are to pay all taxes and other expenses of repairs and improvements on the same during my natural life, and then the title to vest in them absolutely. In witness whereof the said Eliza Robbins has hereunto set her hand and seal this 28th day of April, 1869.'"
In determining the meaning and effect of this recital, the court said:
 "The instrument under consideration contains none of the language or peculiarities of a will. It embodies all the requisites of a statutory deed, and plainly vests in the grantees an estate in fee simple, unless the recitals following the description of the land manifest a contrary intent. We do not think such an intent appears upon the face of the deed.
 "The recital that the land was to be equally divided between the grantees, at the decease of the grantor, was not in derogation of the absolute grant in fee simple. The most that can be said of the recitals is, they manifest an awkward, and probably successful, attempt to reserve to the grantor a life estate in the land." *Page 404 
 "An instrument, having otherwise the formalities of a deed, will be construed to operate as a deed, whenever it appears therefrom that it was the intent of the maker to convey any estate or interest whatever, to vest upon the execution of the paper. If, however, it appears that all the estate which it was the purpose to convey was reserved to the grantor during his life, and the deed was only to take effect upon the death of the grantor, it will be construed to be testamentary in its character. Wall v. Wall, 30 Miss. 91; 19 Cent. L.J. 46.
 "The rule is that unless an instrument, which has been executed, from every point of view seems to be a nullity, it will not be intended that the parties meant that it should be invalid, and some effect will, if possible, be given to it. Gano v. Aldridge, 27 Ind. 294; Stout v. Dunning, 72 Ind. 343."
In Cates v. Cates (1893), 135 Ind. 272, 273, 274, 275,34 N.E. 957, the court had before it the construction of a deed containing the following clause:
 "`The grantor, Prior Cates, hereby expressly excepts and reserves from this grant all the estate in said lands, and the use and occupation, rents and proceeds thereof unto himself during his natural life.'"
The court said:
 "The appellant's contention is that the deed conveyed no interest which became vested upon the execution thereof, but that the exception of `all the estate in said lands,' during the life of the grantor, not only postponed the enjoyment of possession, but denied to the grantees all property rights in said lands until after the death of the grantor, thereby giving the grant a testamentary character.
 "It is further insisted, by the appellant, that the deed, being of a testamentary character, and not having been attested, and probated as required by the statutes of wills, is of no validity."
. . . *Page 405 
 "The instrument is, in form, a deed in which husband and wife join, and which is properly acknowledged before an authorized officer. Granting, by the terms `convey' and `warrant,' with their legal significance to bestow a present estate, and defend the title thereto, we discover no design or purpose to make a testamentary provision. On the contrary, they evince, in the clearest and most explicit manner known to the forms of conveyancing, an intention to convey, and not to devise.
 "The instrument was delivered and entered of record in the proper recorder's office more than 10 years before the grantor's death, acts not performed with relation to wills.
 "The position of the appellant is that all of these evidences of an intention to convey an interest in praesenti are defeated, and that testamentary character is given to the instrument by the exception of `all the estate in said lands' during the lifetime of the grantor.
 "The intention to reserve a life estate is so clearly manifested by the words reserving `the use and occupation, rents and proceeds thereof unto himself during his natural life,' that it is difficult to believe that it was the intention to confer no interest upon the appellees until after his death. It is more difficult to believe that it was the grantor's intention to expressly withhold the fee from the grantees until after his death, for to have done so by the exception would have rendered the reservation of the `use and occupation, rents and proceeds' an idle ceremony. To have reserved the fee and the life estate is to assume that both estates may be held by one and the same person, and we cannot indulge the contention that such a design existed when the law permits no such end."
 "Some effective object must be presumed to have been intended by the grantor, and not that the solemn form of a deed was adopted to create a nullity, such as this instrument must be if it possesses a testamentary character. But the deed, in both the grant and exception, should be construed most favorably to the grantee. Darling v. Crowell
(6 N.H. 421); Green Bay, etc., Co. v. Hewitt, 55 Wis. 96." *Page 406 
In the case of Stroup v. Stroup, supra, the court said at p. 187:
 ". . . it is clearly and firmly settled that the pivotal question is the intention of the grantor. If to postpone title and enjoyment until after his death, it is testamentary; if to confer title and postpone the enjoyment thereof, it is a deed."
This principle is applicable whether the conveyance involves the transfer of personal property, or real estate. It clearly appears from the language of the contract that Fred 3, 4. VanOrman transferred and delivered to appellee the stocks enumerated in the contract, and, by the allegations of the complaint with respect to the assignment in writing of the certificates and with respect to compliance with the by-laws of the various corporations, that Fred VanOrman performed the terms and conditions of the contract, obligatory on him to perform, during his lifetime. In view of this situation, we are of the opinion that the reservation hereinbefore set out accomplished nothing more than a reservation of the income on said stocks to the father for his natural life. This construction does no violence to the language of the contract, meets the apparent intention of the contracting parties, and saves the instrument from being a mere nullity. The contract is not testamentary in character.
In further support of appellee's position it is also claimed that a life estate in personal property cannot be created except by will or by a trust agreement.
In view of the fact that we have determined that the reservation in the contract left the father, at the most, only a life estate, the validity of the reservation was a question affecting only the rights of the contracting parties and in no wise involves the right of the appellant herein. As was said in the case of Cantrell v. *Page 407 Cantrell (1912), 178 Ala. 273, 278, 59 So. 652: "If there is any uncertainty as to the meaning of the reservation of a `living interest,' it would affect only the reservation, and not the validity of the conveyance."
"Ordinarily, if the reservation is void, either for repugnancy, or because it is contrary to law, the result is to leave the conveyance absolute." Tennant v. John Tennant Memorial
5-7. Home (1914), 167 Cal. 570, 572, 140 P. 242. If we were to hold that the reservation in the contract here under consideration was void, the appellee suffered no detriment, as under such circumstance, the conveyance to him was absolute. He is not, therefore, in a position to assail the reservation as against the demands of his mother.
The next question for our consideration is whether the contract between appellee and his father was wanting in consideration and was lacking in mutuality.
 "Consideration is essential; mutuality of obligation is not unless the want of mutuality would leave one party without a valid or available consideration for his promise. The doctrine of mutuality of obligation appears therefore to be merely another mode of stating the rule of consideration that where there is no other consideration for a contract, the mutual promises must be binding on both parties, for the reason that only a binding promise is sufficient consideration for a promise of the other party. But where there is any other consideration for the contract, so that each promise does not depend upon the other for consideration, mutuality of obligation is not essential." 12 Am. Jur. § 13 at page 511.
In the contract before us the terms thereof were fully performed by Fred VanOrman, and as to him the contract was executed and not executory in character. Appellee was not compelled to rely on his father's promise. He took possession of the stocks, and held the original copy of the contract assigning them to him. *Page 408 
It appears from the face of the complaint that there was 8. a sufficient consideration for the promises of the appellee herein. Rodgers v. Reinking (1928), 205 Iowa 1311,217 N.W. 441.
In this case there was a written agreement by the terms of which a mother delivered to her son the sum of $60,000 in consideration of which the son agreed to pay his mother the sum of $200 monthly during her lifetime, and within a year after her death to pay the sum of $20,000 to his brother or his heirs, and $20,000 to his sister, with 4 per cent interest on said sums from the date of the death of the mother. In the event that the sister died prior to the death of the mother then the son agreed to pay to his brother or his heirs $30,000. The court said this was a valid contract, based on a sufficient consideration.
Appellee further contends that since no performance on his part was required during the lifetime of the other contracting party, the obligations of the parties were not concurrent and for this reason appellant's complaint is fatally defective. It is true that no performance was required of appellee until the death of his father, and then only in the event that some of the beneficiaries survived Fred VanOrman. But upon the delivery of the stocks to appellee and his acceptance thereof, he then and there bound himself to carry out his promises, unless relieved by the death of the beneficiaries during the lifetime of his father. The appellant having survived the father of appellee, she may maintain this action for her own benefit. The personal representative of Fred VanOrman's estate could also maintain an action. Restatement of the Law of Contracts, § 135.
The position of appellant in this case is further fortified by the fact that it sufficiently appears from *Page 409 
the allegations of the complaint that appellee accepted the 9. transfer of the stock, and subsequent to the death of his father, paid to his mother more than $30,000 in monthly installments of $500 each. Having accepted the stock in full performance of the contractual obligation on the part of the father, the appellee cannot successfully contend that no consideration moved to him. Hayes v. Shirk (1906),167 Ind. 569, 78 N.E. 653.
The remaining question raised by the demurrer to the complaint challenges the appellant's right to maintain this action because the contract involved is one under seal. Appellant was not 10. a party to the contract between appellee and his father but the contract inured to her benefit. It is well settled by a long line of decisions in this State that an action upon a contract made for the benefit of a third person may be maintained in the name of said third person. Bird v. Lanius (1856),7 Ind. 615; Bryson v. Collmer (1904), 33 Ind. App. 494,71 N.E. 229; Copeland, Executor v. Summers (1894), 138 Ind. 219,35 N.E. 514; Stevens v. Flannagan (1892), 131 Ind. 122,30 N.E. 898; Miller v. Billingsly (1873), 41 Ind. 489; Day v.Patterson (1862), 18 Ind. 114; Beals v. Beals (1863),20 Ind. 163; South Side Planing Mill Ass'n. v. The Cutler Savidge Lumber Co. (1878), 64 Ind. 560; Knight Jillson Co.
v. Castle (1909), 172 Ind. 97, 87 N.E. 976; Vandalia R. Co.
v. Keys (1910), 46 Ind. App. 353, 91 N.E. 173; Reed v.Adams, etc., Wire Works (1914), 57 Ind. App. 259, 106 N.E. 882.
The appellee contends however that the general rule as above stated, with the decisions in support thereof, is not applicable when a contract made for a third party beneficiary is 11. under seal. The case of Haskett v. Flint (1839), 5 Blackf. 69, is cited. *Page 410 
This case was decided prior to the adoption of our Code and we are of the opinion that the rule therein laid down does not now prevail. The precise question now under consideration has not been presented to either our Supreme Court or this court since the adoption of the Code, but it has arisen in other jurisdictions. In the case of Webster v. Fleming (1899),178 Ill. 140, 149, 52 N.E. 975, wherein it was contended that the statute abolishing the distinction between sealed and informal instruments did nothing more than to furnish an additional form of action, the court said:
 "This may be admitted to be correct, but the rule that a third party cannot bring an action in his own name on a contract under seal between third parties, where he is not a party to such contract under seal, is a rule which grows merely out of the requirements of the common law in relation to forms of action. Where the reason of a rule fails, the rule itself ceases.
 "At common law, only an action of covenant or debt could be brought upon a sealed instrument. The rule that, when one person covenants with another to pay money to or perform some act for the benefit of a third person named in the deed, the action must be brought in the name of the covenantee in the deed, and cannot be maintained by the third person in his own name, even though he is a party in interest, and even though it is expressly stated to be for his benefit, has its origin in the nature of the action of covenant, inasmuch as only a party to the instrument under seal can bring an action of covenant or debt."
Again in the early case of Kimball v. Noyes and Another
(1864), 17 Wis. 695, 698, 699, the court, in discussing the right of a third party beneficiary to maintain a suit in his own name where the contract was one under seal, said:
 "In most of these cases there is no attempt to give any reason, and in none of them is there any *Page 411 
satisfactory reason given for a distinction between sealed and unsealed contracts in this respect. On the contrary, the reason usually given is, that the third person, for whose benefit a sealed promise is made, cannot maintain an action on it because he is not a party to the contract. But that is the same objection that has always been made in cases of simple contracts. And it appears from the opinion in Carnegie v. Morrison, 2 Met., 404-5, that after some vacillation, the rule has become established in England, that the objection is good in either case; and it seems obvious that it is good in both if good at all. For where A. promises B. upon a good consideration to pay C. a sum of money, it seems clear that it is wholly immaterial whether it has a seal or not, so far as concerns the question whether it is a promise to C. upon which he can sue in his own name. There is no sound reasoning by which it can be shown that he is a party to it sufficiently to sue on it before it has a seal, but not so afterwards. If it is an unsealed promise to him before, by the same reasoning it is a sealed promise to him afterwards. It follows that as the rule is fully established in this country, that such third party may sue directly on a simple contract for his benefit, the law, to be consistent, should allow the same on a contract under seal."
Persuaded by the reasoning in the cases from which we have quoted, and bearing in mind that it has long been established as the law of this State that the third party beneficiary is 12. the real party in interest, the solution of the question in hand is completed by our statute which carries the following provision: "Every action must be prosecuted in the name of the real party in interest, except as otherwise provided in the next section; but this section shall not be deemed to authorize the assignment of a thing in action not arising out of contract." § 2-201, Burns' 1933. *Page 412 
Judgment of the lower court reversed with instructions to overrule appellee's demurrer to the complaint.
NOTE. — Reported in 41 N.E.2d 693.