BLACKARD *v.* MONARCH'S MANUFACTURERS AND DISTRIBUTORS, INC.

[No. 19,252. Filed November 1, 1960. Rehearing denied January 11, 1961. Transfer denied February 27, 1961.]

*Earl N. Davis, Tyler, Sharp & Davis,* of counsel, *Philip S. Kappes* and *Dutton & Kappes,* on petition for rehearing, all of Indianapolis, for appellants.

*Daniel E. Johnson, Charles L. Whistler* and *Baker & Daniels,* of counsel, all of Indianapolis, for appellee.

RYAN, J.—Ernest R. Mills and John C. Blackard had been partners in a formica fabrication business under the name of Monarch's Manufacturers and Distributors. This partnership was terminated by an agreement between Blackard and Mills on April 5, 1957. The terms of this agreement provided that Blackard would sell all of his interest to Mills, and in return Blackard was to receive One Thousand ($1,000.00) Dollars in cash and Forty-nine Thousand ($49,000.00) Dollars within thirty days. Mills also was to execute a note for Fourteen Thousand Five Hundred ($14,500.00) Dollars to be paid within sixty (60) days. The agreement further provided that a corporation should be formed under the name of Monarch's Manufacturers and Distributors, Inc. and that the Fourteen Thousand Five Hundred ($14,-500.00) Dollar note would be redeemed by the issuance to Blackard of two hundred (200) shares of the stock of the new corporation. Provision was also made for the possible future purchase of Blackard's stock by the corporation or by Mills.

The agreement further contained the following provision:

"The Seller hereby covenants and agrees that he will not manufacture or sell any of the products currently handled by Monarch's Manufacturers and Distributors in the State of Indiana, or the adjacent states, for a period of four years from the date of the execution of this agreement.

"The Buyer hereby covenants and agrees that he

will not enter into a competitive business with said Monarch's Manufacturers and Distributors, Incorporated, hereafter to be formed, or authorize or direct any other person, persons, or firm to enter into a competitive business in his name or for his benefit, in the State of Indiana or adjacent states, for a period of four (4) years from the date of the execution of this agreement."

In addition to this agreement Blackard and Mills entered into another agreement on the same date whereby it was agreed that Blackard would be employed by the corporation as its Vice President for a period of three years at an annual compensation of three (3%) per cent of the gross sales.

On April 17, 1957, the corporation was formed and Mills transferred to the corporation by bill of sale, and deed, the assets of the partnership. Concurrently the corporation assumed all of the business liabilities of Mills including the liability to pay Blackard's Fifty Thousand ($50,000.00) Dollars. Within the thirty days provided for by the contract, the corporation paid Fifty Thousand ($50,000.00) Dollars to Blackard.

On the same date, April 17, 1957, the first meeting of the board of directors of the corporation was held, at which time the agreement, whereby Blackard was to be employed and paid three (3%) per cent of the gross sales, was accepted. He was paid his three (3%) per cent commission.

On November 25, 1957, the following instruments were executed:

### "RELEASE

"The undersigned, MONARCH'S MANUFACTURERS AND DISTRIBUTORS, INC. of Indianapolis, Indiana, by Ernest R. Mills, as President, and Donald L. Walker, as Secretary and Treasurer, and John C. Blackard, of 2893 Greenbrier Street, Sarasota, Florida, hereby covenant and agree that

in consideration of the payment of Fourteen Thousand Dollars ($14,000) by said MONARCH'S MANUFACTURERS AND DISTRIBUTORS, INC., by certified check made payable to John C. Blackard, and other valuable consideration, the said John C. Blackard does hereby release any and all rights and interest that he may have arising out of that certain contract of employment executed on the 5th day of April, 1957, whereby the said John C. Blackard was employed as Vice-President in charge of sales for said MONARCH'S MANUFACTURERS AND DISTRIBUTORS, INC. and the said MONARCH'S MANUFACTURERS AND DISTRIBUTORS, INC. by Ernest R. Mills as President, and Donald L. Walker, as Secretary-Treasurer, do hereby release the said John C. Blackard from any and all duties and liabilities arising under said contract of employment.

WITNESS OUR HANDS AND SEALS this 25th day of November, 1957.

s/ John C. Blackard
John C. Blackard
(CORPORATE SEAL)
s/ James M. Robison
Witness

MONARCH'S MANUFACTURERS AND DISTRIBUTORS, INC.
By: s/ Ernest R. Mills
Ernest R. Mills, President
s/ Donald L. Walker
Donald L. Walker, Sec.-Treas."

"AGREEMENT

"We the undersigned, Ernest R. Mills and John C. Blackard, hereby covenant and agree that in consideration of the mutual release of a certain contract of employment entered into by and between Ernest R. Mills and John C. Blackard on the 5th day of April, 1957, which said contract was adopted by Monarch's Manufacturers and Distributors, Inc., and which said contract was mutually released on the 25th day of November, 1957, by the parties thereto; that in consideration of said mutual release the certain contract entered into by and between the said Ernest R. Mills and John C. Blackard on the 5th day of April, 1957, which said contract provided for, among other things, the repur-

chase by the said Ernest R. Mills from the said John C. Blackard of two hundred (200) shares of the common capital stock of Monarch's Manufacturers and Distributors, Inc., is hereby mutually released and discharged. This certain contract, consisting of two (2) pages, and being that certain contract entered into by the parties hereto at the time of the sale by the said John C. Blackard to the said Ernest R. Mills, of all of his interest in Monarch's Manufacturers and Distributors, of Indianapolis, Indiana, and all of the provisions thereof, are hereby mutually released and discharged by the parties hereto and none of the provisions thereof shall have any further force and effect from the date of this mutual release thereof.

"We, Ernest R. Mills and John C. Blackard, further covenant and agree that the two hundred shares of the common capital stock of Monarch's Manufacturers and Distributors, Inc. now owned by John C. Blackard will be resold to said Corporation, or to Ernest R. Mills individually at his written request, by the said John C. Blackard, his heirs or assigns, as follows: Fifty (50) shares on the 17th day of April, 1958, fifty (50) shares on the 17th day of April, 1959, and the remaining one hundred (100) shares on the 17th day of April, 1960, or at such earlier times and places as may be mutually agreed upon in writing by the parties hereto. It is agreed that Ernest R. Mills shall exercise his option to purchase said stock at earlier dates than those specified if possible, but the specified dates shall otherwise control. Said stock shall be repurchased by Monarch's Manufacturers and Distributors, Inc., or by Ernest R. Mills individually, at its book value at the time of each such resale.

"WITNESS our hands and seals this 25th day of November, 1957.

"s/ Ernest R. Mills               s/ John C. Blackard
   Ernest R. Mills                   John C. Blackard

"WITNESS:

"s/ Donald L. Walker
   As to Ernest R. Mills

"s/ Ralph P. Shawhan
   As to John C. Blackard"

Following the execution of these last two instruments, Mr. Blackard in January of 1958 became President, Treasurer, General Manager and Director of General Fabricators, Inc. and also held ninety-five (95%) per cent of the stock of said corporation. General Fabricators, Inc. then began conducting the same business as the appellee.

On January 24, 1958, appellee filed its complaint for injunction and damages based upon the April 5, 1957 covenant not to compete. The appellants set up an affirmative answer in which they allege the appellee, by virtue of the contract of November 25, 1957, released the appellant, Blackard, from the covenant not to compete. Trial was held by court, and the court found for the appellee on its complaint and against the appellants on their affirmative answer.

Appellants assign as error the overruling of their motion for a new trial, and urge here as error the specifications that the trial court failed to either sustain or overrule their motion to make more specific and to strike, (2) that the decision was not sustained by sufficient evidence, (3) the decision was contrary to law, and (4) that the court erred in its rulings on the admission of certain evidence at the trial.

As to appellants' first contention, the appellants filed their answer while the motion to make more specific and motion to strike were undisposed of. This action constitutes a waiver of such motions, and such contention is therefore without merit.

Appellants, in urging that the trial ourt erred in sustaining objections to various questions propounded by them, have failed to show how these rulings could have prejudiced their case. Excluded testimony is not available on appeal unless the court was advised of the specific testimony sought to be elicit-

ed. In order to preserve for review the refusal of the court to permit a witness to answer a question on direct examination, the motion for new trial must show the question, the objection, and the offer to prove what evidence would have been given by the witness in answer to the question. *Piggly-Wiggly Stores* v. *Lowenstein* (1925), 197 Ind. 62, 74, 147 N. E. 771; *Vaughn Building Company* v. *State of Indiana* (1933), 97 Ind. App. 556, 558, 185 N. E. 656.

In the agreement between Blackard and Mills, dated April 5, 1957, Blackard as the seller covenanted not to manufacture or sell any of the products currently handled by Monarch's Manufacturers and Distributors for a period of four years. Mills as the buyer covenanted that he would not enter into any competitive business with Monarch's Manufacturers and Distributors, Inc., for a period of four years.

As will be noticed, Blackard's covenant pertains to the partnership and its products, while Mills covenant pertains to the corporation to be formed. However, because of the fact that the contract between the two involved the dissolution of their partnership and the contemplation of a new corporation, we are of the opinion that Blackard's covenant at its inception was made for the benefit of the corporation to be formed, together with its stockholders. This was admitted by Blackard, himself, when he testified that it was his understanding that the clause not to compete for four years was for the benefit of "the closed corporation of Monarch's Manufacturers and Distributors, Inc."

Contracts for the benefit of third parties have been long recognized in Indiana, and a third person may sue to enforce the promise made for his benefit even though he is a stranger to the contract and the consideration therefor. *State, ex rel.,* v. *United*

*State Fidelity, etc., Co.* (1930), 92 Ind. App. 4, 172 N. E. 656; *Jackman Cig. Mfg. Co.* v. *John Berger & Son* (1944), 114 Ind. App. 437, 52 N. E. 2d 363; *Clark* v. *Corbly* (1953), 123 Ind. App. 438, 110 N. E. 2d 309.

It is a general rule that where a contract for the benefit of a third person has been accepted or acted upon, it cannot be rescinded by the parties without the consent of the third person. 13 C.J., Contracts, §625, p. 602; 17 C.J.S., Contracts, §390, p. 883. It has been said in the case of *Henderson* v. *McDonald et al.* (1882), 84 Ind. 149, that in the absence of evidence of a refusal to accept such a provision, acceptance will be presumed. Here, however, we may go further than a presumption. The corporation was formed on April 17, 1957, being twelve days after the contract had been entered into between Mills and Blackard. The corporation paid the balance of Forty-nine Thousand ($49,000.00) Dollars to Blackard which Mills had agreed to pay. The corporation immediately entered into business transactions. It sold stock to six other stockholders, several of whom testified that they would not have purchased the stock except for the covenants not to compete. Blackard was made vice-president and commenced his duties as such pursuant to the other agreement he had made on April 5, 1957. Therefore it may be reasonably inferred that the corporation accepted and acted upon the provisions in the contract between Blackard and Mills which inured to its benefit. Consequently, the agreement between Blackard and Mills, dated November 25, 1957, which purportedly released and discharged them from the provisions of the contract dated April 5, 1957, had no effect whatsoever upon the corporation. It accordingly had the right to bring an action for injunctive relief against Blackard as third party beneficiary when

he commenced to conduct a similar business under the style of General Fabricators, Inc., in January, 1958.

The release agreement of November 25, 1957, pertaining to the release of Blackard of his obligations under the provisions of the above mentioned first agreement of April 5, 1957, did not provide or purport to be an instrument or agreement of the corporation and there is nothing in the record showing that its execution was authorized by the corporation or adopted, assumed, or ratified by it. The said release, therefore, if effective at all, stood only as an agreement between Blackard and Mills in their individual capacity and was without any binding force or effect on the corporation.

It follows, therefore, that the appellants failed to establish the allegations of their affirmative answer and the decision of the court is not contrary to law.

Judgment affirmed.

Ax, P. J., Cooper J. and Myers, J., concur.

NOTE.—Reported in 169 N. E. 2d 735.