EWELL ET AL. *v.* KING ET AL.

[No. 19,299. Filed March 13, 1962.]

*F. L. Anderson, Jr., Anderson, Hicks & Anderson,* and *Hilbert L. Bradley,* all of Gary, for appellants.

*Harry Schell*, of Gary, for appellee, Amanda King.

*Benjamin F. Wilson*, of Gary, for appellees Willie M. Williams and Dillie Clara Williams.

AX, J.—This is an appeal from an action to cancel an assignment of a certain real estate contract.

On June 30, 1956, after twenty-three years of married life, Amanda L. King, appellee (plaintiff below), and Marconi E. Ewell, decedent, were divorced. During their marriage appellee King and the decedent purchased through their joint efforts certain real estate. As a part of the divorce settlement the said real estate was conveyed to the decedent by appellee King's quit claim deed dated July 31, 1956. On this same date the decedent and Pauline Lane Ewell, appellant (defendant below), were married. There was evidence to the effect that after the marriage of appellant and the decedent, the decedent continued frequently to see and visit appellee King.

On September 8, 1956, the decedent by a Warranty Deed executed by both himself and appellant, as husband and wife, conveyed the aforesaid real estate to appellee King. The consideration for this deed was the cash sum of $2,500.00, and the proceeds from two mortgages placed on appellee King's separate property in the approximate sum of $3,868.37 and the love and affection that still existed between them.

On November 26, 1956, appellee King by her written contract agreed to sell the aforesaid real estate to Willie M. and Dillie Clara Williams, for the sum of $13,500.00, with monthly payments being in the sum of $140.00. In the contract appellee King designated the decedent as the one to whom the monthly payments were to be made. Also, on that same date appellee King assigned in writing the aforesaid real estate

contract to the decedent. The said terms of the assignment are as follows:

> "For a valuable consideration, receipt of which is acknowledged, the undersigned hereby sells, assigns, and sets over to Marconi E. Ewell, a certain land contract dated November 26, 1956, executed between Amanda L. King as seller and Willie M. Williams and Dillie Clara Williams, husband and wife, as purchasers for the sale of land situated in the City of Gary, Lake County, Indiana, described as:
>
> (property herein described omitted)
>
> together with all sums due and to become due thereon, and covenants that there is now owing thereon Twelve Thousand Two Hundred and no/100 ($12,200.00) Dollars with interest."
>
> (Signature and notary's seal has been omitted by this court.)

The aforesaid real estate contract and assignment were placed with the Gary National Bank, in Gary, Indiana, for collection.

On July 9, 1957, as a result of a heart condition and while visiting with appellee King in Gary, Indiana, the decedent died. Appellant Pauline had last seen her husband alive on January 7, 1957, when he left to go to California. Appellee King attended to the burial arrangements and paid all burial expenses.

The day after decedent's death appellee King notified the Gary National Bank to deliver to her the contract and assignment and any money on hand pursuant to collections. Appellee King also promptly notified Mr. and Mrs. Williams to make no further payments on the said real estate contract to the Gary National Bank, but instead to make them to the First Federal Savings and Loan Association where a copy of the real estate contract had been deposited so that the monthly payments could be applied to the existing

mortgage held by the said institution. Mr. and Mrs. Williams made three monthly payments in the sum of $140.00 each on the said contract after the death of decedent and they refused to make any further payments pending outcome of this action.

In August, 1957, appellant, Pauline Lane Ewell, as administratrix of the estate of Marconi E. Ewell, deceased, filed in the Lake Circuit Court her verified petition for disclosure of property and intermeddling against appellee King, joining as defendants the Gary National Bank and Mr. and Mrs. Williams. The issue in that action related to the real estate contract and the assignment in this action and the consideration for the same. The appellant, Pauline Lane Ewell, as administratrix, alleged that appellee King had concealed assets of the estate and had intermeddled with the said real estate contract and the proceeds therefrom which were the property of the estate. On November 7, 1957, the cause of action was submitted to the court and the court found against the administratrix and for the appellee King.

On December 5, 1957, appellee King filed her complaint in the instant case for cancellation of the assignment of the real estate contract against Pauline Lane Ewell; Pauline Lane Ewell, administratrix of the estate of Marconi E. Ewell, deceased; Willie M. Williams and Dillie Clara Williams, and the Gary National Bank. In substance the complaint alleges that the assignment which was made by appellee King was without consideration and without the promise of any consideration, and was only for the accommodation of Marconi E. Ewell, deceased.

Subsequently the defendant, Gary National Bank, filed an interpleader stating that both appellee King and appellant, Pauline Lane Ewell, as the administra-

trix of the estate of Marconi E. Ewell, had made demands for the proceeds of the collection in the sum of $139.50, and it deposited this money and the said real estate contract and assignment in the Clerk's office of the court below. Thereupon this action was dismissed as to the said defendant, Gary National Bank.

Various other pleadings were filed by and between the parties. Application for change of judge was granted and a special judge qualified to hear the case. The court made certain finding of facts and conclusions of law and entered its judgment for appellee King. Motion for New Trial was made by appellants which was overruled and assigned as error herein.

One of appellants' specifications in the motion for new trial asserted that the court erred in permitting Amanda L. King to testify as to matters against the estate in these proceedings in which an administratrix is a party, on matters which occurred during the lifetime of decedent.

Appellants strongly objected to this testimony on the grounds that the witness was an adverse party and that her testimony on the issues involved was within the provisons of §2-1715, Burns' Ind. Anno. Stats. (1946 Replacement). In spite of the repeated objections of appellants, the court allowed the witness to testify.

Burns' §2-1715 (*supra*) commonly referred to as the "Dead Man's Statute," is as follows:

"In suits or proceedings in which an executor or administrator is a party, involving matters which occurred during the lifetime of the decedent, where a judgment or allowance may be made or rendered for or against the estate represented by such executor or administrator, any person who is a necessary party to the issue or record, whose interest is adverse to such estate, shall not be a competent witness as to such

matters against such estate: Provided, however, That in cases where a deposition of such decedent has been taken, or he has previously testified as to the matter, and his testimony or deposition can be used as evidence for such executor or administrator, such adverse party shall be a competent witness for himself, but only as to any matters embraced in such deposition or testimony." [Acts 1881 (Spec. Sess.), ch. 38, §276, p. 240.]

Appellee King was the first witness called to testify. Over timely objections by appellant, appellee testified to matters which occurred during the lifetime of decedent concerning the matters in controversy.

Appellee King argues however, that the testimony of Dillie Clara Williams (who testified after appellee King) alone was sufficient to make out a prima facie case. It is her contention that where a competent witness makes out a prima facie case for a party, it is not an abuse of the court's discretion to permit the party, who otherwise may not have been competent, to give her version of the transaction.

We agree with appellee's contention based upon the following authorities. *Christman, Administrator* v. *Hack* (1926), 86 Ind. App. 79, 156 N. E. 165; *Heavin* v. *Sutherlin* (1946), 116 Ind. App. 310, 64 N. E. 2d 43, and *Talbott, Administrator* v. *Barker* (1894), 11 Ind. App. 1, 38 N. E. 487.

However, in the instant case, appellee King was the first witness to testify in her own behalf as plaintiff. It is elementary, therefore, that at the time appellant made objections to appellee King's competency to testify to matters which occurred during the lifetime of the decedent, concerning matters in controversy, there had not been a prima facie case made, and this exception to the gen-

eral rule of the above quoted statute would not apply.

Under the provisions of §2-1718, Burns' Ind. Anno. Stats. (1946 Replacement), it is provided:

". . . That, in all cases referred to in section two hundred and seventy six (§2-1715), . . . any party to such suit shall have the right to call and examine any party adverse to him as a witness, or the court may, in its discretion, require any party to a suit or other person to testify, and any abuse of such discretion shall be reviewable on appeal."

However, in the instant case, this would have no application because the overruling of objections to the competency of witnesses to testify is not equivalent to an order by the court calling such persons as witnesses. *Cupp et al.* v. *Ayers et al.* (1883), 89 Ind. 60; *Hensley, Admr.* v. *Reichert* (1925), 83 Ind. App. 335, 147 N. E. 736.

The Supreme Court in the case of *Taylor* v. *Duesterberg* (1886), 109 Ind. 165, 9 N. E. 907, at page 171, aptly stated the general policy of the Burns' §2-1715, *supra,*

". . . Where the contract or matter involved in the suit or proceeding is such that one of the parties to the contract or transaction is, by death, denied the privilege of testifying in relation to such matter, the policy of the statute is to close the lips of the other also in respect to such matter. . . . The true spirit of the statute seems to be, that when a party to a subject-matter or contract, in action, is dead, and his rights in the thing or contract have passed to another who represents him in the action or proceeding which involves such contract or subject-matter, to which the deceased was a party, the surviving party to that subject shall not testify to matters occurring during the lifetime of the

decedent. . . ." See cases cited therein. See also 30 I. L. E. Witnesses, §41, pp. 23, 24 and §42, pp. 27 and 28 for a general discussion.

The application of the above general rules appear to have been recognized by this Court in the cases of *Miladin* v. *Istrate, Admr.* (1954), 125 Ind. App. 46, 59, 119 N. E. 2d 12 (Transfer denied Oct. 22, 1954), and *Nelson* v. *Masterson* (1891), 2 Ind. App. 524, 28 N. E. 731.

The provisions of Burns' §2-1715 were set out verbatim in the timely objection made to appellee King's testimony. All required elements are clearly present to establish that appellee King was not competent to testify as to the matters in controversy. Appellant-Administratrix was a party to the proceeding involving the assignment to her decedent during his lifetime. Appellee King obviously was a necessary party to the record and to the issues raised by her complaint. It is also obvious that appellee King's interest was adverse to the estate of appellant's decedent and the testimony given by her in her own behalf was adverse to the estate and resulted in the judgment rendered adverse to the estate.

By reason of the foregoing, we are of the opinion that the court erred in permitting, over timely objection, the appellee, at her own behest, to testify as to matters adverse to the estate, which occurred during the lifetime of decedent.

In view of our conclusion it is not necessary to discuss other alleged specifications of error. *Tribune-Star Publ. Co., Inc.* v. *Fortwendle* (1954), 124 Ind. App. 618, 115 N. E. 2d 215, rehearing denied 116 N. E. 2d 548; *Flowers* v. *State* (1956), 236 Ind. 151, 139 N. E. 2d 185.

Judgment reversed and this cause is now remanded to the court below with instructions that the court grant appellant's motion for a new trial.

Ryan, C. J., Cooper, J., concur. Myers, J., concurs with a concurring opinion.

## CONCURRING OPINION

MYERS, J.—I concur in the majority opinion, and believe that it could have been based on additional reasons to those relied upon and set forth therein. The reasons upon which I would base a reversal are not presented or argued in appellants' brief, nor do they appear as grounds for error in the motion for new trial. However, the facts supporting this reasoning stand out in the record with such stark clarity that, in my opinion, they cannot be ignored.

I realize that as a general rule the court will not search the record to reverse. But it has been held that this rule was not made to circumscribe the court.

> "The court is not limited by the argument and reasons advanced in the briefs as to why the judgment should be affirmed or reversed. It may go entirely outside the briefs for correct reasons." Flanagan, Wiltrout and Hamilton, *Indiana Trial and Appellate Practice*, §2783, p. 364; *Dudley* v. *Sears, Roebuck & Co.* (1953), 123 Ind. App. 358, 109 N. E. 2d 620; *Van Winkle* v. *Van Winkle* (1954), 124 Ind. App. 626, 118 N. E. 2d 389, 119 N. E. 2d 328.

The record reveals that there was a conditional sale of the real estate involved herein by appellee King as vendor to the Williamses as vendees. The gross sale price was $13,500. The vendees made a $1,300 down payment. The balance of the purchase price was to be paid in monthly installments of $140, the first of which was due on January 1, 1957, and

every month thereafter until the entire indebtedness, including interest, was fully paid. This contract was executed on November 26, 1956.

The specific clause in the contract concerning payment by the Williamses reads as follows:

> "Buyers are hereby given the right to pay any additional amount to apply on the principal and the amount so paid shall thereupon reduce the principal accordingly. Said payments are to be made without relief from valuation and appraisement laws and with attorney's fees *to Marconi E. Ewell, at 2541 Maryland or to such person or place as the said Marconi E. Ewell, may designate.*" (Our emphasis.)

There is also a clause stating that the vendees will not make any repairs "without the written consent of the Seller or *Marconi E. Ewell herein.*" (Our emphasis.)

Attached to this contract was a separate instrument, entitled "Assignment," bearing the same date as that of the contract, wherein appellee King assigned and set over to Marconi the land contract, together with all sums due and to become due thereon. This assignment is set out in the majority opinion.

There was a mortgage on this property held by First Federal Savings & Loan Association of Gary, Indiana, in the sum of $3,868.37, with monthly payments being $102.25.

There is no mention made in the contract as to the mortgage or the manner of making payments thereon. The court, however, in its Special Findings of Fact numbered IX found that the contract and assignment were placed with the Gary National Bank for collection, and the proceeds from the collections were to be used by Marconi E. Ewell, first, in applying them on the mortgage payment due each month in the sum of $102.25. Then the court makes this statement: "The

balance of the collection was to be kept by Marconi E. Ewell."

In Finding numbered VII, the court said: "In the contract the plaintiff designated the said Marconi E. Ewell as the one to whom the monthly payments were to be made."

In its conclusions of law, the court makes these statements:

"3. The real estate contract of November 26, 1956, in which the plaintiff, Amanda L. King, is described as seller, and Willie M. Williams and Dillie Clare Williams are described as buyers, is a valid contract for the sale of the above described premises with Marconi E. Ewell being described therein as the plaintiff's agent for the collection of the monthly payments.

"4. The assignment dated November 26, 1956, in which the plaintiff, Amanda L. King, assigned the aforesaid real estate contract to Marconi E. Ewell was without any consideration and was for the accommodation of the said Marconi E. Ewell, and was in the nature of a power which was not coupled with an interest. It did not transfer any right in the land and only gave to the said Marconi E. Ewell the authority to receive the purchase money."

Regardless of the apparent confusion as to Marconi E. Ewell's legal status as set forth in the special findings of fact and conclusions of law, it is clear to me that the agreement of sale is a contract for the benefit of a third party. Appellee King as vendor and the Williamses as vendees agreed that the monthly payments, which would ordinarily go to appellee King, would be paid to Marconi E. Ewell. He therefore became a donee beneficiary of this contract, and no consideration needed to flow from him in order for him to be entitled to these payments. This type of contract is recognized in Indiana. *Voelkel*

*et al.* v. *Tohulka et al.* (1957), 236 Ind. 588, 141 N. E. 2d 344, 70 A. L. R. 2d 1349; *VanOrman* v. *VanOrman* (1942), 112 Ind. App. 394, 409, 41 N. E. 2d 693; *Reed* v. *Adams, etc., Wire Works* (1914), 57 Ind. App. 259, 266, 106 N. E. 882; *Rawlings* v. *Vreeland* (1921), 76 Ind. App. 209, 127 N. E. 786; *Stevens* v. *Flannagan et al.* (1892), 131 Ind. 122, 129, 30 N. E. 898; *Bryson* v. *Collmer* (1904), 33 Ind. App. 494, 497, 71 N. E. 229; *Carnahan et al.* v. *Tousey et al.* (1884), 93 Ind. 561; *Blackard* v. *Monarch's etc., Inc.* (1961), 131 Ind. App. 514, 169 N. E. 2d 735. All these cases hold that a promise by one person to another for the benefit of a third may be enforced in an action brought by the third person in his own name even though he is a stranger to both the contract and the consideration therefor.

"Frequently the contract of sale requires the purchase money or a part thereof to be paid to a third person, and under the general principles applicable to contracts entered into for the benefit of a third person, the person to whom payment is to be made may sue thereon, and such third person has been held to be entitled to enforce a vendor's lien for the satisfaction of his claim." 55 Am. Jur., Vendor and Purchaser, §345, pp. 772, 773. See, also, 55 Am. Jur., Vendor and Purchaser, §481, p. 881.

It is not necessary that the agreement should have been delivered to a third person, delivery to the contracting party being sufficient delivery to the beneficiary. *Stevens* v. *Flannagan et al., supra.* The rule is that the beneficiary must be the real party in interest and not merely derive an incidental benefit from the performance of promisor. *Harvey* v. *Lowry* (1932), 204 Ind. 93, 183 N. E. 309; *Reynolds et al.* v. *Louisville, New Albany and Chicago Ry. Co. et al.* (1896), 143 Ind. 579, 629, 40 N. E. 410.

In its conclusions of law, the court states that Marconi is described in the contract of sale as a collection agent for appellee King. Not only is this contrary to the court's findings of fact, but it is also contrary to the provisions of the contract, the pertinent section of which has been set forth above. There is no evidence whatsoever in the record that appellee King intended for him to act as such. Appellee King testified several times that she made the arrangements to sell the house because Marconi was sick and was "all down and out," "had nothing to go on," "had worked so hard," and she had promised to see after him if he needed help. This testimony, together with the contract itself, with particular reference to the clause wherein he was to be the recipient of the monthly payments, and to the clause wherein he was to approve in writing any repairs made by the purchasers, all point to her intention to benefit Marconi directly.

It seems to me that the trial court overlooked the fact that a third-party beneficiary contract had been executed, and that the assignment, having been signed on the same day and attached to the land contract, became a part of that contract as a contemporaneous instrument. The legal effect of such an assignment could well be profound. It is known that a vendor may make an assignment of an executory contract for the sale of real estate as distinguished from a conveyance of the land. 55 Am. Jur., Vendor and Purchaser, §407, p. 828. Although the Williamses as purchasers held equitable title to the property as long as they performed the conditions of their contract, Marconi was also granted a contractual interest in the property by virtue of the assignment. This was more than just the right to collect the monthly payments, as there were many other provisions in this

contract, particularly those in reference to the vendor's rights upon default. It is further proof of appellee King's intention to benefit Marconi.

As the assignment and contract were tied together as one, with the obvious intention on the part of appellee King to make Marconi a donee beneficiary, the question of consideration is unimportant. The rights given him by the terms of the contract and the assignment thereof were valuable, and at his death they vested in his widow, appellant herein, pursuant to our laws of descent, §§6-103, 6-201, 7-123, Burns' 1953 Replacement, and his personal representative had the right to take possession of them, §7-701, Burns' 1953 Replacement.

NOTE.—Reported in 180 N. E. 2d 774.