FRANK ADAMCZYK ET AL. *v.* BERNARD SHAPIRO, WELFARE COMMISSIONER

APPELLATE DIVISION OF THE CIRCUIT COURT

FILE No. CV 17-6510-3644

Argued July 18—decided September 30, 1966

*Allen J. Segal,* of Plainville, for the appellant (named plaintiff).

*James E. Hayes,* of Bristol, for the appellant (plaintiff Matthew Adamczyk).

*Harold M. Mulvey,* attorney general, and *Francis J. MacGregor,* assistant attorney general, for the appellee (defendant).

PRUYN, J. The plaintiffs are children of Mary Adamczyk and as aggrieved persons have appealed under § 17-2b of the General Statutes from the action of the defendant in denying to Mary Adamczyk medical assistance for the aged as provided for in § 17-135a. A fair hearing as required by § 17-2a was held, and the transcript of the hearing together with the hearing decision constitutes the record in the trial court. § 17-2b. On such an appeal there is no trial de novo; the court cannot substitute its judgment for that of the commissioner; its basic function is to determine whether the commissioner acted illegally or so arbitrarily and unreasonably as to abuse his discretion. *Ouellet* v. *Shapiro,* 3 Conn. Cir. Ct. 268, 270-71.

The essential facts are not in dispute. On February 8, 1957, the plaintiffs' mother had a life interest in a two-family residence in Bristol in which she resided with one of the plaintiffs. On that date the plaintiffs, each represented by a separate attorney, entered into an agreement between themselves whereby their mother relinquished her life interest in the property to them and in consideration thereof they and the survivor of them would support her "until she dies." On that date the mother was seventy-six years old, and at the time of the fair hearing she was eighty-four years old. The plaintiffs received the sum of $11,227.22 from the sale of the property, and this represented the fair market value at the time of sale. The plaintiffs, from February 8, 1957, to December 13, 1963, expended the entire sum of $11,227.22 and additional sums for the support of their mother. On December 13, 1963, she applied for and received medical welfare aid from the defendant from December 13, 1963, to April 1, 1965, in accordance with § 17-109 (e) of the General Statutes. In April, 1965, the defendant first learned of the life support agreement of February 8, 1957, and thereupon terminated all further medical assistance to her. On June 1, 1965, after termination of welfare assistance to their mother, the plaintiffs entered into another agreement between themselves which provided that the agreement of February 8, 1957, was rescinded and of no force and effect.

There is no dispute that absent the life support agreement of February 8, 1957, the plaintiffs' mother would be eligible for old age assistance under § 17-109. Subsection (e) thereof provides that a person is so eligible who "has not made an assignment or transfer or other disposition of property without reasonable consideration or for the purpose of qualifying for an award; provided

ineligibility because of such disposition shall continue only for that period of time from date of disposition over which the fair value of such property, together with all other income and resources, would furnish support on a reasonable standard of health and decency . . . ." The mother received reasonable consideration for her life interest in the property and has received more than the fair value thereof. See *Ouellet* v. *Shapiro,* supra, 271.

Long after the execution of the life support agreement, special provisions for medical assistance for the aged were enacted by the General Assembly. Public Acts 1961, No. 578, as amended, General Statutes §§ 17-135a to 17-135h. The purpose of this legislation, as stated in § 17-135a, was to provide "all or part of the cost of necessary medical services which the income and resources of such persons are insufficient to provide."

The plaintiffs did not seek any corrections in the finding but have attacked the trial court's conclusions, thereby presenting as a question of law the effect of the two agreements above mentioned upon the eligibility of Mrs. Adamczyk for state aid. The agreement of February 8, 1957, between the two plaintiffs (the mother not being a party to it), whereby the entire proceeds of the sale of the premises in which the mother had a life interest were to be divided equally between the plaintiffs and each agreed to pay 50 percent "for all her expenses, for the support, maintenance and care of Mary Adamczyk; namely, food, clothing, shelter, medical expenses and church costs," to be binding upon them "until she dies," was a valid contract for the benefit of a third party. The benefits thereunder were accepted by the mother, as she received not only the consideration she gave for it but additional sums as well. It is the general rule that when a contract for the benefit of a third party has been

accepted or acted on, it cannot be rescinded by the parties thereto without the consent of the beneficiary, unless the right to rescind is reserved in the contract. *Wolosoff* v. *Gadsden Land & Building Corporation,* 245 Ala. 628, 632; *Blackard* v. *Monarch's Manufacturers & Distributors, Inc.,* 169 N.E.2d 735, 739 (Ind. App.); *Richardson* v. *Short,* 202 N.W. 836, 838 (Iowa); *Rhodes* v. *Rhodes,* 266 S.W.2d 790, 792 (Ky.); 1 Restatement, Contracts § 142; 17A C.J.S., Contracts, § 390. There is nothing in the agreement reserving the right to rescind, and the record is silent as to any consent or as to anything from which consent could be inferred. The attempted rescission of the 1957 agreement by the agreement of June 1, 1965, to which the mother was not a party, is invalid and of no effect. The 1957 agreement remains in full force and effect.

The provisions of the statutes relating to assistance for the aged are contained in §§ 17-108 to 17-135h, in part 3 of chapter 302, entitled "Public Assistance," of title 17 and provide a comprehensive system and procedures for such state aid. Section 17-116 recognizes life support contracts, but only those entered into with a boarding home or institution, and grants assistance to any otherwise eligible person in any such home or institution although he is cared for under such a life contract. The statute is silent as to any life care agreement of the kind involved in the case at bar. No similar exception may be read into the statute in respect to such a contract. If there is any inequity, it is for the legislature, not the court, to remove it.

The 1957 agreement provided a full measure of support for the mother. If she had died shortly thereafter, the plaintiffs would have profited; because she has lived on, the agreement has become burdensome. Such is the risk the plaintiffs took

when they made the agreement. The beneficial interest of the mother in the 1957 agreement is an asset of hers. The record of this case is completely barren as to its value. Furthermore, there is nothing therein as to the ability of the plaintiffs as legally liable relatives to support her, nor as to whether her income, including any available support from the plaintiffs, would be less than the figure of $2100 specified in § 17-135c (3) as one of the requirements of eligibility for medical assistance under § 17-135a.

We conclude that the defendant, in denying the application for medical assistance for the aged for the plaintiffs' mother, did not act illegally or so arbitrarily or unreasonably as to abuse his discretion.

There is no error.

In this opinion DEARINGTON, J., concurred.

KOSICKI, J. (concurring). I agree with the majority that the statute, § 17-116, has no application to the plaintiffs in this case. It appears to be limited to contracts with eleemosynary institutions; this would not include noncharitable organizations or individuals who might enter into contracts for annuities or provision for future support, furnished either in money or in kind. In the present case, it is obvious that the plaintiffs had undertaken full support of their mother in return for the conveyance, and they also undertook to discharge thereby the other brothers and sisters who might otherwise be liable. They took the risk and cannot now be heard to say that they miscalculated the risk and should not be held to their bargain.