The plaintiff, in August of 1971, while receiving state aid under the aid to families with dependent children program (AFDC), was notified that her AFDC award would be terminated effective September 30, 1971, owing to excessive family assets. She requested a fair hearing pursuant to § 17-2a of the General Statutes. She and her authorized representative were fully heard. She has here appealed the decision of the Circuit Court sustaining the action of the fair hearing officer.
Evidence was presented at the hearing that during a review of the plaintiff's eligibility for benefits it was discovered that her family assets exceeded the program limit of $250. An agency worker had determined that a life insurance policy owned by the plaintiff had a cash value of $404 and that the plaintiff had reduced the cash value to $180.48 by prepaying premiums for 1971, 1972 and 1973, all without notice to the welfare department; also that one of the plaintiff's children had a savings account of $100 which had been expended to purchase school clothing for the child and graduation expenses, also without notice to the department.
The plaintiff testified that her daughter had accumulated the $100 over a three-year period by baby sitting and that the child had saved the money *Page 517 
to purchase needed clothing when she entered high school. The plaintiff contended that the $100 ought not to be included in a determination of family assets.
The fair hearing officer cited the department policy as contained in index 204 of volume 1, chapter II, of the Connecticut State Welfare Manual, under the title "Eligibility Requirements for Aid to Families with Dependent Children": "C. Members of the assistance group may not: (1) own a combined total of more than $250 in personal property including cash value in life insurance. (2) sell or otherwise dispose of any real or personal property while in receipt of assistance without the knowledge and consent of the Department." The fair hearing officer also cited the following policy contained in index 386(1) of volume 1, chapter III, of the manual: "1. Reimbursement. Reimbursement is the recovery of all or part of the assistance granted to a recipient, when the cash value of personal property resources available to the recipient exceeds the applicable personal property exemption for the category of assistance received."
The fair hearing officer found that the agency worker acted correctly in reflecting the savings of the plaintiff's daughter as a family asset and that the $100, when added to the $404 cash surrender value of the life policy, represented total family assets of $504. Since there was also a sum of $2 in Christmas clubs, it was determined that the plaintiff's family assets exceeded the permissible limit by a total of $256. The officer further ruled that since it had been determined that it would be in the best interests of the welfare department that the life policy be kept active and since the plaintiff had reimbursed the department to the extent of $58 and additionally had agreed to pay summer camp expenses in the amount of $198 for four of her children *Page 518 
as soon as she recovered the amount of the prepaid premiums from the insurance company, the plaintiff's AFDC benefits should not be suspended.
Section 17-2b (b) of the General Statutes provides in part: "The court, upon such appeal [from a decision of the fair hearing officer], shall determine whether the commissioner has acted illegally or so arbitrarily and unreasonably as to abuse his discretion, and said court [Circuit Court], in accordance with such determination, ... may modify or revise the decision appealed from." Since this is an appeal from the Circuit Court, which considered the administrative decision, we are likewise bound by the standard of whether the commissioner acted illegally or so arbitrarily as to abuse his discretion. Adamczyk
v. Shapiro, 4 Conn. Cir. Ct. 338, 339.
Other federal and state laws pertinent to the resolution of the plaintiff's first claim, that the child's accumulated earnings of $100 ought not to be included in determining the total family assets, appear in the footnote.[1] *Page 519 
The defendant has argued that index 204(C)(1), supra, allows the welfare commissioner to consider a child's accumulated earnings as part of a family's total assets. He states that current income is not taken into account but that federal public welfare regulations provide that "[r]eserves accumulated from earnings are given no different treatment than reserves accumulated from any other sources."45 C.F.R. § 233.20 (a)(6) (viii). It is the plaintiff's argument that this must be interpreted in the light of the federal and state provisions disregarding the earnings of full-time students. 42 U.S.C. § 602 (a) (8)(A)(i) (1970); 1 Conn. State Welfare Manual, c. III, index 332.33(A)(1)(a). The purpose of the income-disregard provisions of 42 U.S.C. § 602 is to increase payments to AFDC recipients because of the rise in the cost of living and to encourage individuals who had been receiving public assistance to seek employment. X v. McCorkle, 333 F. Sup. 1109, aff'd as modified, 404 U.S. 23. The plaintiff contends that the provisions she cites govern the disposition of this case, even though the "disregard provisions" of the state regulations, while they exempt earned income, do not specifically exempt accumulated earnings. We believe the plaintiff's interpretation is the only reasonable interpretation, since the thrust of 45 C.F.R. § 233.20 (a)(6) (viii) is tempered by the general provision of 45 C.F.R. § 233.20
(a)(1), which states: "Requirements ofState Plans. A State Plan for OAA, AFDC, AB, APTD or AABD must, as specified below: ... Provide that the determination of need and amount of assistance for all applicants and recipients will be made on an objective and equitable basis and all types of income will be taken into consideration in the same way, except where otherwise specifically authorized by Federal statute." *Page 520 
To distinguish earned income and accumulated income as used in the federal and state provisions is to do violence to the entire federal system of public welfare. A disregarding of the child's accumulated earnings instills the incentive to work, whereas reimbursement of this accumulated earned income to the welfare commissioner perpetuates a disincentive to work. Furthermore, the court feels that the disregard provision as to a child's income in 42 U.S.C. § 602
(a)(8)(A)(i) is the specific federal statute referred to in 45 C.F.R. § 233.20 (a). Note that this federal provision is similar to index 332.33, "Incentive Earnings — Disregard of Earned Income," (A) (1)(a) of volume 1, chapter III, of the Connecticut State Welfare Manual. Since we feel that the savings account in the instant case ought not to have been included in determining the plaintiff's family assets, we direct that the defendant return to the plaintiff the sum of $58 which the plaintiff has paid to the welfare department by way of reimbursement. The plaintiff's claim of unconstitutionality, accordingly, need not be considered.
It is further claimed that the fair hearing officer acted arbitrarily in denying a retroactive application of the life insurance's cash value to future premiums.
The Connecticut State Welfare Manual, volume 1, chapter II, index 204(C)(1), states that the agency must include a life insurance's cash value as part of the total family assets. Under index 386(1) of chapter III, if this cash value causes the recipient's total family assets to exceed the $250 limit, the recipient must reimburse the commissioner this amount.
The commissioner has an interest in maintaining the integrity of the system of welfare. This function is carried out by periodic investigations into the amount of assets held by welfare recipients to *Page 521 
ensure that only those in need are receiving public support. Failure to report assets, including the cash surrender value of an insurance policy, is not to be condoned. While it is true that the welfare department has permitted the plaintiff to maintain the insurance policy, finding that course in the department's best interest, this does not excuse the plaintiff's failure to make full disclosure.
We find that the fair hearing officer did not act illegally, arbitrarily or in abuse of his discretion in upholding the plan of the agency worker to bring the family assets of the plaintiff within the allowable limit, and we affirm the action of the Circuit Court in so ruling.
 There is error in part, the judgment is set aside and the case is remanded with direction to render judgment sustaining the appeal with regard to the bank account and referring the case to the defendant commissioner for action consistent with this opinion.
In this opinion CIANO and SPONZO, JS., concurred.